STATE OF MISSOURI EX REL. HAZEL DEAN, RELATOR, v. HONORABLE RAYMOND O. DOUGLAS, AS CIRCUIT CLERK OF ST. LOUIS COUNTY, MISSOURI, RESPONDENT.—165 S. W. (2d) 304.

St. Louis Court of Appeals. Opinion filed November 4, 1942.

Motion for Rehearing Overruled November 17, 1942.

*Jesse L. England* for relator.

1286

*Herbert Ziercher* for respondent.

ANDERSON, J.—This is an original proceeding in mandamus to compel the respondent, as clerk of the Circuit Court of St. Louis County, to pay over to relator, out of a fund or deposit held by said clerk in a condemnation suit, the sum of $1000 found by the court to be due relator.

The undisputed facts as disclosed by the petition for the writ and return thereto are as follows:

At the September Term, 1941, of the Circuit Court of St. Louis County, the City of Ladue filed an action to condemn several parcels of land formerly owned by Campbell Glenn, deceased.

The property involved in the suit had been devised by will to Sarah Glenn for life with remainder to her heirs at law. After the death of Campbell Glenn, Sarah Glenn conveyed her life estate in said property to the United Railways of St. Louis, a corporation,, by a deed dated December 5, 1899, and title to said life estate in said property is now held by mesne conveyances in the name of the St. Louis Public Service Company, a corporation.

Plaintiff named as parties defendant to said suit the said Sarah Glenn and the St. Louis Public Service Company, as well as certain individuals, apparently the owners of a contingent remainder in said land, listed as Robert A. Glenn, Robert C. Glenn, Robert Joseph Glenn, Jane Glenn Shubert, and Lester Shubert. Plaintiff also named as party defendant relator herein, a lessee of the premises under lease from the St. Louis Public Service Company.

Commissioners were appointed in said suit in accordance with the statutes in such cases made and provided to assess the damages to the owners. Their report, filed November 14, 1941, awarded damages for the taking of all of said land in the total amount of $21,300, but did not allocate the damages as between the defendants. As to the parcel on which relator's buildings are located, the award was in the lump sum of $9280. The plaintiff thereafter paid into the registry of the court said $21,300.

Thereafter a stipulation was entered into by and between defendant St. Louis Public Service Company on the one hand and the defendants, Sarah Glenn, Robert A. Glenn, Robert C. Glenn, Robert Joseph Glenn, and Jane Glenn Shubert on the other, that the defendant Sarah Glenn should receive out of the award the sum of $11,500; that defendant St. Louis Public Service Company should have and receive the sum of $300 on account of the taking of that portion of said land in which it owned a life estate; and that the remainder of said total

award, $9500, should be paid to defendant Robert A. Glenn, subject to the provisions of the will of Campbell Glenn, deceased.

Thereupon defendant Robert A. Glenn filed a motion in said cause, to which he attached said stipulation, and in which he prayed that the court enter its order directing the clerk of said court to pay out the award in accordance with the said stipulation, after determining the sum, if any, that Hazel Dean, relator herein, was entitled to receive.

Thereafter, on orders made pursuant to this stipulation, and upon the uncontested motion of Sarah Glenn, $11,500 of the fund was paid to Sarah Glenn, and $300 was paid to the St. Louis Public Service Company, leaving the sum of $9500 in the registry of the court to be disbursed to the parties entitled thereto.

Thereupon defendant Hazel Dean, relator herein, filed an interplea in which she alleged that in the year 1927 she caused to be erected on the premises a certain frame structure, thirty-two feet by thirty-two feet, which she used as a restaurant and waiting room for patrons of the defendant St. Louis Public Service Company, and that she owned on said premises another building fifteen feet by fifteen feet, which she used as a storeroom in connection with the operation of said larger building, and that the reasonable value of said buildings at the time of the filing of the plaintiff's petition was the sum of $2000. She further averred that she had enjoyed a large lucrative business which she would have continued to enjoy but for the condemnation of her said buildings by the plaintiff in said suit. The prayer of her interplea asked that the court hear evidence and award to each defendant such sum as the court should find fair and reasonable as compensation for the property condemned, and that the court make an appropriate order touching the distribution of said award.

The defendants Robert A. Glenn, Robert C. Glenn, Robert J. Glenn, Jane Glenn Shubert, and Lester Shubert filed their joint answer to said interplea, in which answer they admitted that the property upon which Hazel Dean, relator herein, operated a restaurant, under lease from the St. Louis Public Service Company, was appraised by commissioners appointed by the court, and that said commissioners made an award in the sum of $9280, as damages for the taking of the property sought to be condemned by plaintiff, which said award was for the property alleged to have been leased by said defendant Hazel Dean, together with other property. Said answer also contained a general denial.

A trial was had on the issues raised by said interplea and answer, and resulted in a finding in favor of interpleader, Hazel Dean, relator herein, and the assessment of her damages in the sum of $1350. The court thereupon ordered that said interpleader Hazel Dean be allowed and paid the sum of $1350 as her proportionate share of $9280 theretofore awarded and paid into court by plaintiff for damages to said

interpleader and other defendants. Costs were assessed against the plaintiff.

The defendants Robert A. Glenn, Robert C. Glenn, Robert J. Glenn, Jane Glenn Shubert, and Lester Shubert thereupon filed a motion for new trial on said interplea. Said motion was argued and submitted, and the court thereafter entered its order that said motion would be sustained on the ground that the finding assessing damages was excessive, unless the said Hazel Dean would remit the sum of $350 within five days, and that if said *remittitur* was made, the motion would be overruled. Said *remittitur* was thereafter made and the motion was overruled.

On August 1, 1942, defendants Robert A. Glenn, Robert C. Glenn, Robert Joseph Glenn, Jane Glenn Shubert and Lester Shubert took an appeal without bond to this court from said judgment in favor of Hazel Dean. The term of court at which the appeal was taken expired on September 19, 1942. Thereafter the relator Hazel Dean made demand on the clerk of said court, respondent herein, for the $1000 so awarded her in said judgment, but respondent refused to turn over to her said sum. Relator thereupon presented to this court her petition for mandamus.

We issued our alternative writ, to which respondent made return, which after alleging the facts as we have heretofore detailed them, further alleged that under the law Hazel Dean, relator herein, was not entitled to receive payment of said sum of $1000 until her claim upon which said award was based was finally adjudicated on appeal.

The sole question presented for determination is whether or not an appeal without bond operates as a *supersedeas,* where the fund over which the parties litigate is deposited in the registry of the court. Respondent in his brief presents the affirmative of said issue, while relator, relying upon our decision in State ex rel. Tuemler v. Goldstein, 209 Mo. App. 102, 237 S. W. 814, contends that it does not have such effect.

Respondent contends that the statute relating to *supersedeas* bonds (Sec. 1188, R. S. Mo., 1939, Mo. R. S. A., sec. 1188), does not apply to every final judgment, but only to judgments which are enforceable by a writ of execution; and that since the judgment in this case is not enforceable by a writ of execution the appeal itself stays the enforcement of the judgment. The fallacy in this reasoning rests in the assumption that if the case at bar does not come within the statute, the mere taking of the appeal will operate as a *supersedeas.*

It is true that at common law a writ of error operated as a *supersedeas* of all proceedings on the judgment in the trial court, and that the same effect was given an appeal in chancery. [3 Am. Jur. 195.] But, the proceeding by appeal in actions at law was entirely unknown to the common law, and wherever it is found at the present time its existence rests purely upon constitutional or statutory origin.

In Missouri, appeals in all cases, whether at law or in equity, are statutory. Therefore, in determining whether any right to *supersedeas* exists as an incident of the appeal, we must. look to the wording of the statute rather than to the decisions construing the effect of writs of error under the common law or appeals in chancery. And, in construing the statutes, the general rules of statutory construction apply, including, of course, the well settled rule that a statute cannot be extended by construction or intendment to include cases not reasonably within its scope. In other words, where the statute deals with the question of *supersedeas*, by specifically providing in clear language the character of cases where the appeal will operate as a *supersedeas*, that class cannot be extended by construction, but rather, in such cases the statute impliedly negatives the right in other cases.

Section 1188, Revised Statutes Missouri 1939 (Mo. R. S. A., sec. 1188), provides that an appeal "shall stay the execution in the following cases, *and no others* (italics ours): First, when the appellant shall be an executor or administrator, guardian or curator, and the action shall be by or against him as such, or when the appellant shall be a county, city, town, township, school district or other municipality; second, when the appellant, . . . shall . . . enter into a recognizance to the adverse party in a penalty double the amount of whatever debt, damages and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court upon the appeal, . . . Provided, however, that the court may, at the time of granting an appeal, by order of record, fix the amount of the appeal bond. . . ."

The statute is clear and specific as to the cases in which an appeal shall stay the execution. It does not include in express words a case where the fund disposed of by the judgment is in the hands of the clerk of the court, nor does it provide, either expressly or by implication, that an appeal will stay the enforcement of a judgment in those cases not enforceable by execution.

Nor can we agree with plaintiff's contention that Section 1188 has application only to judgments that require a writ of execution to enforce them. This has been decided many times by the appellate courts of this State. One of the early cases so holding is State ex rel. The Laclede Bank v. Lewis, 76 Mo. 370.

In that case this court had awarded its peremptory writ of mandamus against a circuit judge, who appealed from that judgment and gave the bond required by law for staying the proceedings until the matter could be heard in the Supreme Court. Thereafter this court was about to issue its writ of mandamus notwithstanding the appeal, whereupon the Supreme Court issued its writ of prohibition against this court. Respondent contended that the word "execution" in Section 3713, Revised Statutes Missouri 1879 (now Sec. 1188,

R. S. Mo. 1939) was not broad enough to cover a writ of mandamus, and that therefore the bond given did not operate as a *supersedeas*, but the court held otherwise, saying:

"But it is insisted that a peremptory writ of *mandamus* is not an 'execution' upon a judgment, within the meaning of the statute (Sec. 3713), and in support of this proposition, reference is had to the penalty of the recognizance provided for in section 3713; and also to the definition of the term 'execution' as found in sections 2335, 2336, regulating that form of process known as *fieri facias*. [10 Mo. App. 378.]

"From a careful examination of the several provisions of the statutes, we think it quite clear that the term 'execution,' in section 3713, and the term 'proceedings,' in sections 3717, 3718, are used interchangeably, and mean one and the same thing, and that is, that the execution or performance of the judgment or decision appealed from, whatever it may be, is stayed by the allowance of said appeal, and the approval of said recognizance in the penalty and conditioned, as required by section 3713. In other words, the process appropriate and necessary for carrying into effect the judgment or decision appealed from, whatever it may be, is superseded by the appeal and recognizance in question.

"The form and nature of that process, necessarily depends upon the form and nature of the judgment or decision appealed from. In any event, whatever may be its form, name or purpose, it is equally stayed by force of the statute in question. In this construction we are supported, if support be necessary, by the condition of the recognizance itself, the language of which is, 'that the appellant will prosecute his appeal with due diligence to a decision in the appellate court, and shall perform such judgment as shall be given by such court, or such as said court may direct the circuit court, or the St. Louis Court of Appeals, to give, and if the judgment of such court, or any part thereof, be affirmed, that he will comply with and perform the same, so far as it may be affirmed.' The language of the recognizance, we think, clearly interprets the sense in which the term 'execution' is used in the statute before us. It plainly and manifestly is not limited to a *fieri facias* only, but extends to and includes the performance or execution of whatever judgment the appellate court may give, or direct to be given, and if the original judgment be affirmed, to a compliance with and performance of the same, whatever it may be or require.

"Such, we think, is the plain import of the language of the statute. In this language we fail to discover anything favoring the exemption of the writ of *mandamus* from the operation of the rule incident to all other forms of process adapted and designed to carry out and execute the final judgments and decrees of all courts, from whose decisions appeals are allowed, with the statutory bond in question."

Other cases to like effect are State ex rel. Grand Avenue Ry. Co. v. Wood, 142 Mo. 127, 44 S. W. 225; The State ex rel. The St. Louis and Kirkwood Railroad Company et al. v. Hirzel, 137 Mo. 435, 37 S. W. 921; and State ex rel. Gray v. Hennings, 194 Mo. App. 545, 185 S. W. 1153.

In the foregoing cases a bond was actually given in each case, and the contention was that the bond did not stay the proceedings because the judgments were not enforceable by a writ of execution, which contention impliedly conceded that no stay of execution could be obtained on appeal except under the statute.

The respondent's position here is just the reverse, i. e., he contends that if the case does not fall within the class of judgments enforceable by a writ of execution, the appeal itself stays the enforcement of the judgment, thus reading into it the common-law rule with respect to common-law writs of error and appeals in equity.

We have made an extensive search of the authorities in this and other States, and find that no such construction has been made either under Section 1188 or of similar statutes of other States. On the contrary, the general rule is that the writ of error or appeal, under modern statutes, does not of itself operate as a *supersedeas*. [3 Am. Jur. 196, sec. 537; 4 C. J. S., p. 975.]

We rule that the appeal in the case at bar did not stay the enforcement of the judgment.

The respondent places a great deal of reliance upon State ex rel. and to the Use of Pennsylvania Fire Insurance Co. v. Sevier, 340 Mo. 675, 102 S. W. (2d) 882.

That was a proceeding in prohibition, and the opinion discloses the following facts: Sometime previous certain fire insurance companies had brought a suit to review an order of the Superintendent of Insurance refusing to approve an increase in fire insurance rates. During the pendency of the suit, the companies collected the increased rates on all policies issued and outstanding, and upon an order of the court paid to the clerk of the court the increase collected from the policyholders. Thereafter the court decided the case against the insurance companies and ordered the impounded funds, totalling approximately $1,650,000 distributed to the policyholders from whom they had been collected. The insurance companies took an appeal from this judgment, and gave an appeal bond in the sum of $25,000. Thereafter, Charles H. Buchanan and Louise M. Buchanan, in behalf of themselves and others similarly situated, filed a petition in which they sought, as policyholders, to establish claims against the fund impounded and to secure payment and distribution of the fund. The insurance companies thereupon filed their application for a writ of prohibition to prohibit the circuit court from proceeding with the Buchanan petition. The court granted the writ, saying:

"As heretofore related, an appeal from the judgment in the rate case was duly taken to this court. That appeal was presented by oral argument and submitted to this court *en banc* on the day preceding the submission of this case. In the appeal in the rate case, the determination of the title to the impounded funds and the proper distribution thereof was formally presented and submitted. It therefore becomes apparent that the question presented in the present case is simply one of procedure—that question being whether a circuit court may enter a judgment disposing of an impounded fund, grant an appeal from that judgment, and then, while that appeal is pending, make an order based upon a petition filed in the case after the granting of the appeal, which order would dispose of the fund pending the appeal and in spite of it. To hold that such authority is vested in respondent would substantially nullify the rights incident to an appeal."

We do not believe that the ruling in the Sevier case lends any support to respondent's contention in the case at bar, for in that case the petition of the Buchanans contemplated further action by the trial court, *i. e.*, the determination of the claims of the Buchanans and other policyholders. Therefore, the court was right in holding that the proceedings were stayed by the previous appeal in the case, because such appeal transferred the jurisdiction of the case to the Supreme Court and suspended the exercise of all judicial functions in the case by the trial court whether an appeal bond was filed or not. The only purpose of an appeal bond is to suspend execution of a judgment where its execution is a ministerial act. The appeal itself suspends all judicial functions looking toward the enforcement of the judgment. [State ex rel. Patton v. Gates, 143 Mo. 63, 44 S. W. 739.] In the case at bar, if the execution of the judgment had required the further exercise of judicial function, as it did in the Sevier case, then clearly no bond would have been necessary to stay proceedings. But, such was not the case, and, therefore, the Sevier case does not control in support of respondent's contention here.

The only other cases upon which respondent relies are State ex rel. Hamilton v. Guinotte, 156 Mo. 513, 57 S. W. 281, 50 L. R. A. 787, and Linck v. Troll, 84 Mo. App. 49.

The respondent in State ex rel. Tuemler v. Goldstein, 209 Mo. App. 102, 237 S. W. 814, made the same contention that is being made by the respondent in the case at bar, and relied upon the Guinotte case. Judge Daues, who wrote the opinion in the Tuemler case, distinguished the Guinotte case from the one before the court, and held that respondent's contention was without merit. We believe the distinction made by Judge Daues is valid and applicable here.

In the Linck case, the statute here under consideration, Section 1188, Revised Statutes Missouri, 1939 (Mo. R. S. A., sec. 1188), was not involved.

We do not want to be understood as holding that in interpleader cases it is necessary that the appeal bond given under the statute must be in double the amount awarded by the judgment if the fund awarded is in the registry of the court. In such cases, no debt or damages are recovered against the adverse party appellant, and, therefore, appellant is not required, in order to suspend the excution of the judgment pending the appeal, to give a bond covering the fund in possession of the clerk. Such fund is not in the possession of appellant, and, therefore, the obligation of the bond under the statute that he ''shall perform such judgment as shall be given by such court, or such as the appellate court may direct the court to give, and if the judgment of such court or any part thereof, be affirmed, that he will comply with and perform the same . . . '' does not require him to give a bond guaranteeing the safekeeping of the fund held by the clerk pending appeal.

The amount of the bond in such a case should rest within the sound discretion of the court, should be conditioned as required by the statute, and should be sufficient in amount to guarantee that appellant will prosecute the appeal with due diligence and perform such judgment as should be rendered against him and cover the costs recovered and the costs and damages recovered in the appellate court upon appeal. Such is the rule as established by the Supreme Court in State ex rel. Duggan v. Dillon, 98 Mo. 90, 11 S. W. 255.

In that case Michael Carroll recovered a judgment in Iowa against John Thornton for $4499, and thereafter sued in equity in St. Louis to subject certain interest payments payable to Thornton from a trust fund to the payment of his Iowa judgment. Peter R. Kenrick, trustee of the trust estate, was made a party to the suit. By agreement, Michael Duggan was made a party defendant, as assignee of the interest of Thornton, and upon Carroll's death the suit was revived in the name of Tittman, his administrator. By consent of all of the parties, an order was made requiring Kenrick, the trustee, to pay the accrued and accruing interest to the clerk of the court, to be held subject to the order of the court. Pursuant thereto, the trustee paid into court the sum of $3000. Thereafter the court adjudged that there was due from Thornton to plaintiff the sum of $6323.19, and ordered that the clerk apply the fund on deposit to the payment of the debt, and further ordered that the trustee continue paying the income from the trust estate to the clerk until the debt and costs were satisfied. Defendants appealed, giving an appeal bond in usual form in the sum of $850. Thereafter, the Circuit Judge, at a term subsequent to that at which the appeal was allowed, directed the clerk to pay the balance to the plaintiff, whereupon Duggan applied to the Supreme Court for a writ of prohibition. Respondent resisted the writ on the theory that as the judgment in favor of plaintiff was for $6323.19, and as the appeal was for only $850, the appeal did not supersede the

judgment, nor did it stay the execution thereof. The court held that the order of the court approving the bond and allowing the appeal operated as a *supersedeas,* and that the fact that no money judgment was rendered, and that the money in dispute, or part of it, was in the custody of the court, are proper matters for the court's consideration in fixing the amount of the appeal bond. The court said:

". . . Under our practice act, appeals may be allowed with or without stay of execution. Section 3713 provides that to make the appeal operate as a stay of execution the appellant, with two securities to be approved by the court, must 'enter into a recognizance to the adverse party, in a penalty double the amount of whatever debt, damages, and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court upon the appeal, conditioned,' etc. This section, as amended by the act of March 28, 1885 (Acts 1885, p. 216), provides, further, that the court may, at the time of granting the appeal, 'fix the amount of the appeal-bond, and allow appellant time in vacation to file the same, subject to the approval of the clerk, and the bond thus filed and approved shall stay execution.' By section 3717, if the appeal is granted by this court or a judge thereof, the appeal 'shall not operate as a stay of proceedings, unless a like recognizance, as in case of other appeals in civil cases, be entered into,' etc. Section 3719 is in these words: 'The court, judge, or clerk taking such recognizance shall fix the amount or sum in which it shall be taken, approve the same, and enter the approval thereon.' It is not necessary that the order approving the bond and allowing the appeal should say that execution is thereby stayed. The order of the court approving the bond and allowing the appeal operates as a *supersedeas*; nothing more is required. From the statutes just cited it will be seen that it is the duty of the circuit court, in allowing an appeal, not only to inquire as to the sufficiency and solvency of the sureties, but it must also fix and determine the amount of the bond or recognizance. The court passes upon the sufficiency of the sureties and amount of the bond when it approves the bond and allows an appeal. From that time on the judgment is superseded and execution stayed.

"The respondents contend that the court in allowing the appeal had nothing to do with the amount of the appeal-bond, that the appellant must fix that at his own risk; and so it seems to have been ruled in State v. Adams, 9 Mo. App. 464. To the ruling in that case we do not agree. As far back as the practice act of 1849 (Laws 1848-49, p. 94, Sec. 15) it was made the duty of the court in allowing an appeal to fix the amount of the appeal-bond; and section 3719, before quoted, comes down through the Revision of 1855 and 1865. If the appellant must determine the amount of the bond at his own risk, why should the judge be required to fix the amount thereof? The

object in requiring the court to determine the amount of the bond is that when the appeal is allowed the question of *supersedeas* shall be fixed and settled once for all. True it is that section 3713 requires the penalty of the bond to be double the amount of debt and costs recovered and costs in the appellate court, but in many cases there is no money judgment, and the costs in the appellate court can only be approximated. Indeed, in this very case there is no money judgment against any of the defendants, and $3000 of the money in dispute is in the actual custody of the court. These were all proper matters for the court to consider in fixing the amount of the appeal-bond. It follows from what has been said that the rule heretofore issued shall be made absolute and the writ of prohibition will be issued in conformity to the prayer of the petition."

And, likewise, in the instant case it follows from what has been said, that the judgment rendered in favor of relator was not superseded since no appeal bond was given, and, therefore, the peremptory writ should issue. It is so ordered. *Hughes, P. J.,* and *McCullen, J.,* concur.