BARRON G. COLLIER, Inc., a Corporation, Respondent, v. AMERICAN CAFETERIA, a Corporation, Appellant.*

In the Kansas City Court of Appeals, November 5, 1923.

1. **CORPORATIONS: Contracts: Contracts Made in This State by Foreign Corporations not Licensed to do Business Therein are Absolutely Void.** Contracts made in this State by foreign corporations not licensed to do business in this State are absolutely void.

2. ————: **Registration: Law Requiring Registration Applies to Both Foreign and Domestic Corporations.** The law requiring annual registration with the Secretary of State and providing for a cancellation of the certificate or license with power in the Secretary of State to rescind such cancellation, applies to both foreign and domestic corporations.

3. ———: ———: Contract Executed During Suspension of Rights of a Corporation, Previously Licensed to do Business, Held not Absolutely Void. Under section 10, Laws 1913, p. 169, providing for forfeiture of the rights and privileges of foreign corporations failing to register, and section 14 authorizing Secretary of State to rescind the forfeiture, and sections 9813 and 9815, Revised Statutes 1919, having the same effect, a contract entered into while the rights of a corporation previously licensed to do business had been suspended but not performed until after rescission of the forfeiture, *held* not absolutely void in absence of statutory provisions clearly providing such a penalty in view of sections 9793 and 9823, Revised Statutes 1919.

*Headnote 1. Corporations, 14 A. C. J,, Section 4002; 2. Corporations,. 14 A. C. J., Section 3963 (1926 Anno); 3. Corporations, 14 A. C. J., Section 3963 (1926 Anno).

Appeal from Circuit Court of Buchanan County.—*Hon. Thos. B. Allen,* Judge.

AFFIRMED.

*Groves & Watkins* for respondent.

*W. K. Amick* for appellant.

TRIMBLE, P. J.—Plaintiff is a foreign corporation organized under the laws of New York and engaged in the business of advertising. Defendant owns the Pennant Cafeteria, an eating house in the city of St. Joseph, Missouri. On September 15, 1919, plaintiff entered into a written contract with defendant whereby the former agreed to advertise the latter's business, by means of display cards maintained in all the street cars of St. Joseph for a period of sixty months from November 15, 1919, and for which defendant agreed to pay the sum of $60 per month. The contract provided that if the cards were not furnished in time for the above commencement date, the latter could be changed to the date of the installation of the service and the time would run thereafter for the number of months specified. Under

this provision the service called for in the contract began January 5, 1920.

There is no dispute as to the amount defendant has paid on the contract nor as to the balance due for the service rendered, if the contract is valid and enforceable. The case was submitted to the trial court upon an agreed statement of facts wherein it was stipulated that, if the contract is enforceable, the amount for which judgment should be rendered in plaintiff's favor is $694.80.

It seems that plaintiff's resident agent in St. Joseph solicited and obtained the contract on September 15, 1919. Furthermore, that while plaintiff, as a foreign corporation, was, on April 27, 1914, duly licensed to do business in Missouri, yet on December 2, 1914, the Secretary of State, under the authority of section 10 of the Act of March 27, 1913 (Laws 1913, p. 169), cancelled the plaintiff's license because of its failure to register with the Secretary of State on or before December first of that year as required by section 2 of said 1913 Act (Laws 1913, p. 167).

On September 20, 1919, five days after the contract sued on herein was entered into, but before anything therein mentioned was done thereunder, the Secretary of State, pursuant to the authority contained in section 10 of the Act approved May 30, 1919 (Laws 1919, p. 230), rescinded the forfeiture of license entered against plaintiff and restored said corporation to good standing on the records of the State department.

Defendant's contention, in effect, is that as plaintiff's license to do business in Missouri had been cancelled for failure to annually register, and such cancellation was in effect on September 15, 1919, the day the written contract was entered into, therefore, said contract and everything done thereunder was absolutely void, and not only is the plaintiff powerless to collect anything due thereunder but the defendant can recover whatever amount it has paid thereon. Defendant's theory is that the parties, under the circumstances of this case,

are in precisely the same situation as if the plaintiff had never obtained a license to do business in this State. Of course, it is well settled that contracts made in this State by foreign corporations not licensed to do business in this State are absolutely void. [Booth v. Scott, 276 Mo. 1, 31.] But the question to be determined in the case now before us is whether the rights of the parties hereto are the same as if that were the situation here.

It is true that section 10 of the 1913 Act (Laws of 1913, p. 169) giving the Secretary of State power to cancel the license for failure to comply with the provisions of that Act, says that if the corporation fail to comply on or before the first day of December, "the corporate rights and privileges of such corporation shall be forfeited," and the Secretary of State shall cancel the license on the margin of the record "whereupon all the powers, privileges and franchises conferred upon such corporation . . . shall cease and determine." This language may appear to be much stronger and more drastic than the law as it now stands (section 9813, R. S. 1919), for the same now reads that the corporate rights and privileges shall be forfeited, "whereupon all the powers, privileges and franchises conferred upon such corporation . . . shall, *subject to rescission as in this act provided,* cease and determine," etc. But it will be observed that the 1913 Act contains the same provision whereby the Secretary of State could "rescind the forfeiture" (Sec. 14, Laws 1913, p. 170) as appears in the 1919 Act. [Section 9815, R. S. 1919.] So that, notwithstanding the difference in the verbiage of the two first-mentioned sections, the former is no more drastic than, and is in practical effect the same as, the latter.

The cases cited and relied upon by defendant have reference to foreign corporations who have attempted to acquire rights and transact business in this State without first complying with the laws thereof. And section 3039, Revised Statutes 1909 (now section 9732, R. S. 1919), under which plaintiff was required to, and

did, procure a license, has reference solely to foreign corporations. The law requiring annual registration with the Secretary of State and providing for a cancellation of the certificate or license, with power in the Secretary of State to *rescind* such cancellation, applies to both foreign and domestic corporations. It would seem that a forfeiture of corporate rights under the latter law was in fact only a *suspension* of those rights during the time elapsing between the cancellation of the certificate or license and the rescinding of such cancellation by the Secretary of State. And, in fact, the Legislature used the word "suspension" in section 9823, Revised Statutes 1919, which is the same as section 21 of the 1913 Act (Laws 1913, p. 172) and which provides that:

"No corporation shall maintain an action in any court of this State for the collection of bills or accounts payable or for the enforcement of a contract, made while such corporation is in suspension, or after the forfeiture of its certificate, or license, under the provisions of this Act, unless it shall have first been reinstated, or the forfeiture entered against it rescinded as in this Act provided."

It would seem that this section, by the very force of its terms, negatives every contention made by the defendant in regard to the rights of the plaintiff under the circumstances of this case. Manifestly, it provides a vastly different penalty and result from that prescribed in section 9793, Revised Statutes 1919, for failure to first obtain a license, namely, forbidding the maintenance "of any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of the contract or tort."

In this case, on the day the contract was executed, the plaintiff, although having been licensed to do business in Missouri, had had its rights suspended for failure to make its annual report. Five days after signing of the contract, but before anything was done thereunder by either party, its rights under the license

were restored to it by the order of rescission made by the Secretary of State. With its rights fully restored, plaintiff proceeded to render the services agreed upon and defendant to pay therefor but failed to pay for all the services rendered. Clearly, the Legislature did not contemplate that a contract made and performed under such circumstances should be absolutely void and nonenforcable. And such result will not be declared unless the statutory provisions, considered as a whole, clearly provide such a penalty. [Harris v. Runnells, 12 How. (U. S.) 79.]

The judgment is affirmed. All concur.