Franc Arnold et al., Trustees, Appellants, v.
H. Piper Company, Appellee.

Gen. No. 41,947.

BURKE, P. J., dissenting.

Opinion filed May 5, 1943.   Rehearing denied May 19, 1943.

MILTON KAUFFMAN, of Chicago, for appellants; J. F.
BISHOP, of Chicago, of counsel.

HAROLD E. MARKS and LEONARD GORDON, both of Chi-
cago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.
Plaintiffs sued for damages for breach of a contract
between Packers Brands, Incorporated, a Missouri
corporation, and The H. Piper Company, an Illinois
corporation. Judgment after trial by the court with-
out a jury was for plaintiffs in the sum of $77.80 and
they appeal, asking judgment here for $9,336.00.
Packers Corporation, owner of a dog food formula
and a scientific compound of ingredients for dog food,
entered into a contract with the Piper Company
May 20, 1937, granting the latter a license to merchan-

dise the product. The license for 10 years covered Chicago and a surrounding area and limited Piper's dog food business to Packers' dog food, or to that containing at least 50 per cent of Packers' compound. Under the contract Piper was obliged to purchase two tons of the compound simultaneously with the execution of the contract and after six months at least one ton per month, all at $164 per ton and Piper had an option to cancel the contract on 60 days' notice within the six month period. It is conceded that Piper bought two tons during the first six months but none thereafter and that the option to cancel was not exercised.

January 1, 1938, Packers' corporate rights were forfeited by order of the Secretary of State of Missouri by virtue of section 4619, Rev. Stats. of Mo. 1929, to-wit:

"If any corporation shall fail to comply . . . the corporate rights and privileges . . . shall be forfeited, and the secretary of state . . . cancel the certificate or license, . . . whereupon all the powers, privileges and franchises . . . shall subject to rescission . . . cease and determine, and the secretary of state shall notify such corporation . . . that its corporate existence and rights . . . have been forfeited and canceled, and the corporation dissolved, subject to rescission. . . ."

Plaintiffs sue as trustees under section 4622, a related section which provides:

"When the forfeiture . . . has been declared, the officers and directors . . . at the time . . . shall be trustees of such corporation with full power to settle its affairs and distribute its assets among its stockholders, after paying the debts due and owing by such corporation, and as such trustees to sue and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands."

January 21, 1938, Packers wrote Piper of the requirement of the agreement that Piper buy at least one ton of compound a month and that Packers was ready, willing and able to sell. February 8th it again wrote Piper to the same effect. These letters were not signed, but concluded, "Packers Brands, Incorporated, By: Secretary." February 14, 1938, Piper responded that it had no success selling the dog food, had made every effort, but could not compete in price, could not perform under the contract, and that there was an understanding with Mr. Arnold that if the item was not saleable the agreement would be terminated.

The office of Packers was in the law office of plaintiff Sigoloff. Packers had no investment in ingredients, kept no stock, but purchased ingredients as orders came. To make dog food, Piper mixed the compound with stale bread and water, put it through a machine, boxed, sealed and packed it; and delivered it to retailers.

Plaintiff sought to recover damages for an anticipatory breach of the contract for the entire term of the 10 year contract, claiming first that the breach occurred prior to January 1, 1938, and that in any event, the breach took place on February 14, 1938. Defendant, by way of avoiding liability on the theory that the merchandise was unfit, attempted to show that the merchandise molded in the stores. The court found that defendant had breached its contract for the month of December 1937, but that it was not liable after January 1, 1938. The series of letters exchanged between the parties clearly indicates that there was no anticipatory breach prior to January 1, 1938, and that neither so considered. We see no reason to disturb that finding of fact.

The remaining question is one of law whether on February 14, 1938, Packers whose charter had been forfeited January 1, 1938, acquired a cause of action based on an anticipatory breach on that date by Piper. The court decided the question of law adverse to plain-

tiffs on the ground that the action of the Secretary of State of Missouri on January 1, 1938, rendered Packers incapable of performance under the contract and that any repudiation thereafter by Piper was meaningless. The decision involved determination of the question whether during the year 1938 the Corporation was dissolved and unable to perform executory contracts; or in suspension only with power to transact its ordinary business until January 1, 1939. Plaintiffs say that Packers' situation following February 14, 1938, is irrelevant because the cause of action accrued on that day. They introduced a form of affidavit sent by the Secretary of State of the State of Missouri for rescission of the forfeiture order under sec. 4621 and they admit that the affidavit was not filed. Section 4621 provides:

"The secretary of state may rescind the forfeiture . . . upon presentation of an affidavit signed by the president, or secretary, . . . setting forth that such corporation has not suspended its ordinary and lawful business within one year next before the filing of such affidavit, . . . ."

Sigoloff testified concerning the affidavit, there were no objections to the questions put to him, and no point can be made of the admission of the testimony.

Plaintiffs contend that at the time of the alleged breach Packers was not dissolved but suspended, and direct our attention to the reference to rescission in section 4619 and to the provision of section 4621, under which the Secretary of State "may" rescind the forfeiture. A reading of section 4619 and 4621 with section 4622 gives rise to difficulty. If the ordinary forfeiture under 4619 was conditional only, why should the affairs of the Corporation be settled and its assets distributed under 4622? And, if the forfeiture were final and a dissolution made, how could the purpose of

section 4621 be fulfilled by a showing that the Corporation did not suspend its ordinary business? Plaintiffs cite and rely mainly upon *Arnold v. Streck,* 108 F. (2d) 387, claiming that it is decisive of this case in plaintiffs' favor. That case, decided by the United States Circuit Court of Appeals, 7th Circuit, involved the same plaintiffs as appear in this case. By virtue of that case plaintiffs say that we must hold that dissolution did not occur until January 1, 1939 and that plaintiffs had the right to recover for a breach in 1938. We think there can be no question of the right of plaintiffs to sue and recover for a breach occurring before they became trustees.

Piper admits renunciation but contends that, the Secretary of State not having rescinded the forfeiture of January 1, 1938, dissolution became effective on that date. It points out that plaintiffs could not have filed the requisite affidavit for rescission, since the evidence shows Packers had no active contracts after January 1, 1938 and had no credit or funds. Sigoloff testified that Piper was the only customer, and that Packers had no credit, after January 1, 1938, and it appears that the trustees had no power to borrow money for the Corporation. Piper relies upon the case of *Estel v. Midgard Inv. Co.* (Mo. App.), 46 S. W. (2d) 193, to sustain its position that Packers was dissolved on January 1, 1938.

In the *Streck* case the court said that the construction of the pertinent sections of the Act by the St. Louis Court of Appeals in *Estel v. Midgard, supra* and *Watkins v. Mayer* (Mo.), 103 S. W. (2d) 566 was the correct one and that Packers was completely incapacitated for business after January 1, 1939. It said the trustees' powers were to wind up and liquidate, with powers to enforce obligations maturing prior to January 1, 1939. The breach in that case occurred in February 1939 and, accordingly, an entirely different

question was presented, furthermore to say that the alleged anticipatory breach here was a maturing obligation is to beg the question.

We take the same view as the Circuit Court of Appeals that the Missouri cases referred to by it correctly construed the sections involved in this appeal. Under that construction, the Circuit Court of Appeals decided the *Streck* case and plaintiffs infer from that decision that since the breach here occurred prior to January 1, 1939, a right of action accrued to them. No obligation matured in plaintiffs' favor on February 14, 1938, because Packers on that date "was without power to function as a corporation" and plaintiffs "were without any power or authority to transact any business on behalf of the corporation, except to wind up its affairs and distribute its assets." *Estel v. Midgard Inv. Co.* (Mo. App.), 46 S. W. (2d) 193, consequently, it could not claim an anticipatory breach, on that day, of a contract requiring it to produce and sell dog food and compound to Piper for almost 10 years.

We have not been referred to any case which construes section 4621, and the language therein is a shadow upon the clear language of the related sections. Reading the several sections together in the light of the many cases cited which have construed sections 4619 and 4621, we are of the opinion that the declaration of the Secretary of State was an order of dissolution subject to rescission (*Estel v. Midgard, supra*), and that on February 14, 1938, the order not having been rescinded, Packers was incapable of performing and no anticipatory breach was possible.

For the reasons herein given the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL, J., concurs.

MR. PRESIDING JUSTICE BURKE dissenting: Passing the dispute as to whether there was a renunciation of

the contract before January 1, 1938, it is clear that there was a renunciation by the defendant in February 1938. The defendant found the contract unprofitable and clearly stated that it did not intend to perform. In fact, it claimed a right to cancel. This claim of a right to cancel, advanced prior to the commencement of the suit, was abandoned by the defendant. The contract did not require performance by the corporation as distinguished from performance by a successor to the corporation's rights, such as plaintiffs. In my opinion the record shows that plaintiffs were at all times able to perform and were urging performance. The corporation could have performed but was not required to perform after the renunciation. In February 1938 and in July 1938, when the instant suit was filed, and for a long time thereafter, the corporation could have been reinstated. The suspension was subject to be remedied at the time of the renunciation. The suspension of the certificate of the corporation could not abrogate the corporation's contract rights. The contract was entered into long before the suspension and at a time when the corporation had a clear right to do business. The cases cited by defendant do not support its contentions. It is my view that the authorities cited by the respective parties are support for plaintiffs' theory. In considering this case we must view the situation as it existed at the time of the breach. The defense now relied upon appears to be an afterthought. Plaintiffs are entitled to judgment for damages computed upon the difference between the total contract price and the cost of rendering performance to the defendant as approved at the trial. In *Lake Shore & Michigan Southern Ry. Co. v. Richards,* 152 Ill. 59, our Supreme Court said (80):

"It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and

recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover, under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

The difference between the contract price and the cost of performance was adjudicated by the trial court at $77.80 per month. Plaintiffs are entitled to damages in the sum of $77.80 per month, multiplied by 120 months, or $9,336.