J. H. Leibson, S. E. Leibson and Helen Hoffman, Appellants, v. Carl J. Henry, E. J. Keitel and Harry P. Drisler, as Members of Unemployment Compensation Commission Of Missouri, and Michael J. Carroll, Director of the Division of Employment Security.—No. 39950.—204 S. W. (2d) 310.

Court en Banc, September 8, 1947.

*J. M.* and *Jos. D. Feigenbaum* for appellants.

*John L. Porter* and *Charles F. Moseley* for respondents; *Michael J. Carroll* of counsel.

LEEDY, J.—This is an appeal by plaintiffs in a proceeding under Sec. 9432B,[1] to review a decision of the Unemployment Compensation Commission of Missouri re-assessing unemployment contributions against plaintiffs-appellants, which, with interest, aggregated $1246.41. · The circuit court affirmed. In Division One an opinion was adopted (one judge dissenting) affirming the circuit court's judgment, and the cause was transferred to the court en banc.

The writer, to whom this case was assigned after the divisional opinion failed of adoption en banc, has changed his view, and reached the conclusion that the case was properly ruled by the divisional opinion. Utilizing portions of that opinion as part of the general framework for this one, it will be amplified by treating of the aspect of the case to which the dissent was directed. The issue is one of law, there being no substantial dispute concerning the facts. The case really turns upon the question of the nature and effect of the statutory forfeiture of a corporation's charter, and is determinable upon a construction of the applicable sections of Art. I, Chap. 33, R. S. '39, and Mo. R. S. A., as the same existed at and following the date of forfeiture, and prior to the effective date of "The General and Business Corporation Act of Missouri." (Laws 1943, p. 410 et seq., and amendments thereto; Laws 1945, p. 696; Laws 1945, p. 711.)

On and prior to January 1, 1940, plaintiffs were the sole shareholders and directors of Shelco Manufacturing Company, Inc., a Missouri corporation (hereinafter referred to as "Shelco"), and an "employer" within the purview of the Unemployment Compensation Law, Art. 2, Chap. 52, secs. 9421-9445.

On January 1, 1940, Shelco having failed to make the annual registration report required by Sec. 5085, and having failed to file the anti-trust affidavit required by Sec. 5086, its charter was on that date, pursuant to Sec. 5091, forfeited, and so declared by the Secre-

---

[1]This and all other references to statute sections are to R. S. '39, and to the same section numbers in Mo. R. S. A., unless otherwise expressly noted.

retary of State, and its certificate duly cancelled. However, the plaintiffs did not undertake, as trustees, to liquidate the corporation's affairs as contemplated by Sec. 5094, nor was rescission of the forfeiture, as provided by Sec. 5093, ever applied for, but the garment manufacturing business of Shelco was thereafter operated by plaintiffs in manner as theretofore, and in the corporate name until January 10, 1942, at which time continuing business losses resulted in an accumulation of obligations, including Federal taxes, and forced a "close down." The only company asset then remaining was machinery "mortgaged for more than it was worth." All of the unemployment contributions in question accrued during the period of more than two whole years next *after* the date of forfeiture.

The commission by its order and finding assessed unemployment contributions due and payable since January 1, 1940, against plaintiffs, having drawn the conclusions of law that plaintiffs, by virtue of Sec. 5094, "became trustees· of Shelco Manufacturing Company, Inc., on January 1, 1940, and as such trustees were without power or authority to transact any business on behalf of the .corporation except to wind up its affairs and distribute its assets. Since these trustees did transact business for a purpose other than winding up the affairs of the corporation and distributing its assets, they have become· personally liable and are jointly and severally liable for the obligations incurred by them because of having engaged in business operations and activities beyond the scope of their authority as such trustees. Such liability includes the liability for the payment of contributions on the wages of persons employed by them after January 1, 1940."

Plaintiffs complain that, under Sec. 5094, the assessment should have been made against them *as trustees* (to the extent of assets received by them from the corporation), and contend that the assessment against them as individuals should be vacated because "directors of a corporation who carry on the business of the corporation after its charter is forfeited for failure to file affidavits or reports, are not liable personally for the corporation's obligations after the charter forfeiture, but are liable only as trustees to the extent of funds of the corporation received by them." The cases relied on are Fidelity Adjustment Co. v. Cook, 339 Mo. 45, 95 S. W. 2d 1162, and Woodward Hardware Co. v. Fisher, 269 Mo. 271, 190 S. W. 2d 576. They further contend that while forfeiture of Shelco's charter ended Shelco's existence as a corporation *de jure,* yet its continued operation as formerly, and under the corporate name, constituted Shelco a corporation *de facto* whose corporate existence can be questioned only in a direct proceeding by the State, and meanwhile plaintiffs can be subjected to no personal liability for obligations incurred after the forfeiture.

Neither of the two cases relied on under their first assignmnt is in point because they did not involve the issue presented here. Both were actions based solely upon *statutes* imposing personal liability for the debts of a corporation upon officers and directors (as partners) who continue to carry on the business after forfeiture of the corporation's charter. Liability was denied in each, but on the ground that the portions of the statutes upon which the actions were based were unconstitutional because of defective titles. As pointed out in the Woodward case, the effect of the portions of the statute held unconstitutional would have been to make the directors personally responsible as partners for obligations incurred *before* as well as after the forfeiture and cancellation of the charter. Liability apart from that expressly imposed by such statutes was not asserted, and hence not considered. It is this latter question with which we are now confronted.

Annual registration is required under Sec. 5085 "on or before the first day of July." Section 5086 provides that the anti-trust affidavit shall be filed at the time of registration. Section 5089 fixes the fee for annual registration at $5.00, if the corporation "registers within thirty days from the first day of July," and provides for an increasing scale up to $35.00, if such registration is made December 1, or thirty days thereafter. Section 5090 provides for the issuance by the Secretary of State of a certificate of registration, and says "that certificates of registration shall not be issued to any corporation until it has complied with all the provisions of this article. Transaction of business as, or the exercise of the functions of, a corporation without certificate of registration posted as herein required, shall be prima facie evidence of a violation of this article."

Then follows the section upon the effect of which the case turns. It is Sec. 5091, and reads as follows: "If any corporation shall fail to comply with the provisions of this article, on or before the thirty-first day of December, the corporate rights and privileges of such corporation shall be forfeited, and the secretary of state shall thereupon cancel the certificate, or license, of such corporation by appropriate entry on the margin of the record thereof, whereupon all the powers, privileges and franchises conferred upon such corporation by such certificate, or license, shall subject to rescission as in this article provided, cease and determine, and the secretary of state shall notify such corporation by mail, addressed to its post-office address, as disclosed by the records of his office, that its corporate existence and rights in this state have been forfeited and canceled, and the corporation dissolved, subject to rescission as in this article provided."

Another section (Sec. 5094) provides that "When the forfeiture of the certificate, or license, of any corporation has been declared, the officers and directors or the manager, or managers, of the affairs of said corporation, at the time such forfeiture is declared, by what-

ever name they may be known in law, shall be trustees of such corporation with full power to settle its affairs and distribute its assets among its stockholders; after paying the debts due and owing by such corporation; and as such trustees to sue and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands.''

Section 5100 makes it a misdemeanor, punishable by fine or imprisonment in the county jail, or both, for any person or persons to ''exercise, or attempt to exercise, any of the powers, privileges, or franchises of any corporation after the certificate or license of same has been forfeited and canceled as in this article provided.''

The question giving rise to division of opinion is whether, in view of provisions of Sec. 5093 and Sec. 5101,[2] the forfeiture provided by Sec. 5091 is to be regarded as absolute, or whether it is conditional and in the nature of a suspension for at least one year before becoming absolute. This court has never passed on this exact question. The nearest approach to it appears to be State ex rel. McDowell v. Libby, (Mo. App.) 175 S. W. 2d 171, where Sec. 5093 was unsuccessfully invoked as amounting to mere suspension, and not a dissolution. There are other cases, both within and without this jurisdiction, which take the view that the forfeiture under Sec. 5091 operates as an ipso facto dissolution, subject, however, to rescission. Estel v. Midgard Inv. Co., (Mo. App.) 46 S. W. 2d 193; Watkins v. Mayer, (Mo. App.) 103 S. W. 2d 566; Arnold v. Streck, (C. C. A., 7th Cir.) 108 Fed. 2d 387; Arnold v. H. Piper Co., 48 N. E. 2d 580, 319 Ill. App. 91. Contra: State v. A. B. Collins Co., (D. C., Mo.) 34 Fed. Supp. 549.

In the absence of a construction by this court, Judge Otis of the United States District Court for the Western District of Missouri, in State v. A. B. Collins Co., (1940) 34 Fed. Supp. 550, 552, (the second of two similarly styled cases), likewise construed Sec. 5091 as providing ipso facto forfeiture for the defaults here in question. Of Sec. 5091 he said, ''It would be difficult to conceive of

---

[2] These sections, respectively, provide: (1) That the Secretary of State may rescind such forfeiture (for a fee of $50.00 if within one year from the date of its entry, or, after one year, for not less than the fees required by law for original corporation) upon the filing of an affidavit *setting forth that such corporation has not suspended its ordinary and lawful business within one year next before the filing of such affidavit.* or that the corporation at the time of the forfeiture was declared held title, or transferable interest, in real estate'' [Sec. 5093]; and (2) Deny to a corporation the right to maintain actions ''for the collection of bills or accounts payable or for the enforcement of a contract, made while such corporation is *in suspension.* or after the forfeiture of its certificate, or license, . . . unless it shall have first been reinstated, or the forfeiture entered against it rescinded as in this article provided.'' [Sec. 5101]

any language which could be more expressive of dissolution of corporate existence than the language used in this statute. Failure to comply with the provisions of law, so says the statute, ipso facto results in the forfeiting of 'the corporate rights and privileges of 'such corporation.' The Secretary of State does not forfeit those rights and privileges. They are ipso facto forfeited." He held that a corporation against which the action prescribed by Sec. 5091 has been taken is dissolved and non-existent, saying that that conclusion "seems, on the face of the statutes involved, to be beyond possible controversy." However, in that case, because there had been no rescission, nor application therefor, and no facts upon which such an application could be bottomed, Sec. 5093 was thought not to be concerned, and its possible effect not considered; nor was Sec. 5101. Except for the circumstance that his opinion thus omits consideration of these two sections (and they are the only ones upon which suspension could possibly be implied), we might well adopt his as our own exposition, and without further comment.

As we have noted, in providing for rescission of forfeiture, Sec. 5093 speaks of presenting an affidavit "setting forth that such corporation has not *suspended* its ordinary and lawful business within one year next before the filing of such affidavit." It is not even debatable that mere suspension (to say nothing of forfeiture) of corporate powers would of necessity so disable a corporation as to bring about at least a temporary cessation of its usual and ordinary business during the period of suspension, because in the absence of its franchise, or license, it could lawfully do nothing. Furthermore, it can hardly be supposed that the condition upon which rescission may be effected is to be bottomed upon a showing, under oath, of criminality under Sec. 5100. Therefore, to give ordinary meaning to the word "suspended", as here used, would result in direct conflict with the other sections. and defeat the manifest object and purpose of the act as a whole.

" 'Suspend' ordinarily means temporary cessation; in its natural signification, something which may not be permanent rather than that which necessarily is so; but the connection in which the word is used may give it a stronger meaning and *it may imply a termination*." 60 C. J. 1191 (Italics ours.) We think the requirements of the several sections mentioned make it plain that the word "suspended" was used in the latter sense; that is, the statute contemplates revivor of a corporation which, notwithstanding temporary cessation of operations in consequence of the forfeiture, has not been permanently disabled, by the termination (as distinguished from temporary cessation) of its business, either through voluntary retirement from the field, insolvency, liquidation, or other cause. A too literal construction of a section of a statute which would prevent the enforcement of the whole act according to its intent should be avoided,

960

■ Turning to Sec. 5101 (the pertinent portions of which are set out in full in marginal note #2 hereof), it will be seen that it purports to apply in two situations: First, to a corporation "in suspension," and, secondly, to a corporation "after the forfeiture of its certificate, or license." It is quite apparent that in using the words "in suspension" and "after the forfeiture of its certificate, or license" recognition is accorded to the distinction between these statuses, and that they are not synonymous. This is emphasized by the alternative requirements of the same sentence that the corporation "shall have first been reinstated, *or* the forfeiture entered against it rescinded, *as in this article provided.*" But the article, while making provision for rescinding a forfeiture, wholly fails and omits to provide a method for reinstatement of a suspended corporation. Therefore, taken literally, it would mean that a corporation might be suspended (thus implying a temporary condition), but, for want of method, could not be reinstated; whereas, from the more lasting and serious consequences of forfeiture, the article provides speedy and simple relief by way of rescission. Was such an anomaly intended?

It will be found that formerly the law did provide for suspension of corporations on ■ October 1 for failure to register and file the anti-trust affidavit. (Laws 1913, p. 167.) This was the express provision of Sec. 8 of that act. Section 9 provided for reinstatement on or before December 1 of corporations suspended under Sec. 8, and, in default thereof, Sec. 10 provided for forfeiture on the latter date. Section 21 of that act is in the exact language of present Sec. 5101, and, in that setting its recitals with respect to suspension and reinstatement were appropriate and meaningful. But the 1913 act was repealed by Laws 1917, p. 230, which re-established the penalty of fine for such delinquencies, the. method prior to 1913. In 1919, the 1917 act was repealed, and replaced by the act now under scrutiny. Laws 1919, p. 227, now embodied in Art. I, Chap. 33. The 1919 act follows the general scheme of the 1913 act. In fact many (if not most) of its sections, including present Sec. 5101, were taken bodily from the 1913 act, but with the important difference that the suspension feature of the 1913 act was omitted. It would appear that in so borrowing Sec. 5101 from the former act, its inapplicable suspension and reinstatement provisions were simply not deleted.

"It is a general rule that the courts, in the interpretation of a statute, may not take, strike, or read anything out of a statute, or delete, subtract, or omit anything therefrom. To the contrary, it is a cardinal rule of statutory construction that significance and effect should. if possible, be accorded to every word, phrase, sentence, and part of an act. However, there are cases in which words of a statute are so meaningless or inconsistent with the intention of the legislature otherwise plainly expressed in the statute, that they may be rejected as surplusage, and omitted, eliminated, or disregarded."

50 Am. Jur., Statutes, sec. 231, p. 219. The situation here presented undoubtedly calls for the application of the latter portion of this rule. Apart from its vagrant references to suspension and reinstatement, Sec. 5101 is in complete harmony with the rest of the article. But such references are so inconsistent with, and contrary to the spirit and intent of the whole article, so plainly evident from the other sections hereinabove set out, as to be meaningless and without purpose.

Adverting to the words of the statute, it plainly provides, "If any corporation shall fail to comply with the provisions of this article . . . the corporate rights and privileges of such corporation *shall be forfeited,* and the secretary of state *shall thereupon cancel the certificate,* or license, . . . whereupon *all the powers, privileges and franchises* conferred upon such corporation by such certificate, or license, *shall* subject to rescission, . . . *cease and determine,"* and the corporation notified by mail "that its corporate existence and rights in this state have been forfeited and canceled, *and the corporation dissolved,"* etc. Sec. 5091.

Of what effect is a forfeiture pursuant to these provisions—does the forfeiture effect a "dissolution," and, if not, what aspect or attribute of corporate entity, *de facto* or otherwise, remains? "The term, 'dissolution,' as applied to a corporation, signifies the extinguishment of its franchise to be a corporation and the termination of its corporate existence. It has been described as that condition of law and fact which ends the capacity of the body corporate to act as such and necessitates a liquidation and extinguishment of all legal relations existing in respect to the corporate enterprise." 16 Fletcher, Cyclopedia of Corporations, sec. 7966. And this court has said in the case of Bruun v. Katz Drug Co., Inc., 351 Mo. 731, 736, 173 S. W. 2d 906, 909 (after quoting the excerpt from the section, supra, of Fletcher's Cyclopedia), "the forfeiture of a corporation's charter by the Secretary of State for failure to comply with the laws of Missouri effects a 'dissolution.' (Citing cases.) 'Apart from statutes extending the existence of, or conferring powers upon, corporations for the purpose of winding up their affairs, the dissolution of a corporation implies the termination of its existence and its utter extinction and obliteration as an entity or body in favor of which obligations exist or accrue or upon which liabilities may be imposed.' 13 Am. Jur., sec. 1342, p. 1191; 19 C. J. S., Corporations, sec. 1727."

From the plain language of the statute, and upon the authority of the cases cited, our conclusion is that the effect of a ▅▅ forfeiture as provided in Sec. 5091, is to ipso facto completely conclude the corporate entity, and without judicial action, except and subject to the right of rescission upon the application and showing required by Sec. 5093. In this connection, it may be said that Collier v. American Cafeteria. 215 Mo. App. 182, 256 S. W. 118, and Yerxa, Andrews &

Thurston v. Viviano,. (Mo.) 44 S. W. 2d 98, are clearly distinguishable, and for the reasons pointed out by Judge Otis in the Collins case. At the time Collier's license was cancelled (it was a foreign corporation), the 1913 act providing for suspension was in effect. The suspension ripened into forfeiture, which was later rescinded, thus removing the prohibition imposed by present Sec. 5101 (then in force) against maintaining the action "unless . . . the forfeiture entered against it [is] rescinded." The result in the Collier case was undoubtedly correct.

The commission concluded the law to be and found plaintiffs "jointly and severally (personally) liable," because, as trustees, they had transgressed their powers. (See conclusions of law, supra.) Upon forfeiture, the plaintiffs under Sec. 5094 became *trustees* with the full power to liquidate Shelco's affairs to the end of protecting the interests of the stockholders and the creditors. Plaintiffs, as trustees, were without power to transact any business of Shelco, except to wind up its affairs and distribute its assets. Sec. 5094; Turner v. Browne, 351 Mo. 541, 173 S. W. 2d 868; Estel v. Midgard Inv. Co., supra; Arnold et al. v. Streck et al., supra; Illinois Power & Light Corporation v. Hurley, 49 F. 2d 681. Acting beyond their powers as trustees, plaintiffs continued the ·transaction of business in like manner as had Shelco prior to the forfeiture, paying or becoming obligated for wages upon which unemployment contributions were payable to the Unemployment Compensation Fund. Plaintiffs, the stockholders of Shelco, a corporation prior to the forfeiture, had enjoyed the freedom from personal liability to its creditors, and had vested the managerial responsibility of Shelco ·in themselves. ' (The plaintiff, J. H. Leibson, was, in fact, the owner of all of the certificates of capital stock.) Regulatory provisions had been enacted by the Legislature for the protection of stockholders and creditors, and in aid of the taxing power of the State. Such legislative provisions were ignored by plaintiffs as directors, and again, subsequently to the resulting forfeiture (of which forfeiture plaintiffs should be charged with knowledge), plaintiffs, as trustees, acted beyond their powers. It seems to us a court should recognize plaintiffs' personal liability for obligations so incurred by them in such unlawful transaction of business in the corporate name, transgressing their powers as trustees. If a court should otherwise rule, such a ruling would be in violation of the plain purpose of the law, open the door to fraud, and sanction the former directors' operation of the business, without liability, affording opportunity for wasting or diverting the corporate assets, thus subjecting stockholders, creditors and the State to a remediless loss of their rights to avail themselves of the corporate property. It seems no Missouri decision supports or opposes our decision upon this very question, but the bases of the decisions of courts· of other jurisdictions lend support to our ruling. Ewald Iron Co.

v. Commonwealth, 140 Ky. 692, 131 S. W. 774; Jones v. Young et al., 115 W. Va. 225, 174 S. E. 885; Poritsky v. Wachtel, 27 N. Y. Supp. 2d 316; Trower et al. v. Stonebraker-Zea Live Stock Co. et al., 17 F. Supp. 687.

■ This brings us to the other assignment that while the forfeiture operates to "end the corporation as a *de jure* corporation, but it continues as a *de facto* corporation, whose existence can be questioned only in a direct proceeding by the State for that purpose." It has been written the legality of the existence of a corporation cannot be questioned collaterally on the ground that it has forfeited its charter unless the forfeiture has been adjudged and enforced in a direct proceeding by the State. This is true unless the intention is clearly expressed that the forfeiture and dissolution shall take effect ipso facto and without any proceeding to adjudge and enforce the same. 18 C. J. S., Corporations, sec. 105, p. 501. The latter principle was applied by this court en banc in Bradley v. Reppell, 133 Mo. 545, 32 S. W. 645, 54 Am. St. Rep. 685, where ■ the term of existence had expired by limitation. This was held to be an ipso facto dissolution, and that, accordingly, it ceased to be a corporation *de jure and de facto,* which could be shown and taken advantage of in a collateral proceeding without the necessity of judicial investigation, there being no element of estoppel involved. We perceive no difference in principle between the effect of an ipso facto dissolution because of the expiration by limitation of corporation's period of existence, and ipso facto dissolution under the statutes here involved.

The judgment should be be affirmed.

It is so ordered. *Conkling, Clark* and *Douglas, JJ.,* concur; *Tipton,* C. J., concurs in result; *Hyde, J.,* dissents in separate opinion; *Ellison, J.,* dissents, and concurs in the dissenting opinion of *Hyde, J.*

HYDE, J. (dissenting).— ■ I cannot concur in the opinion of Leedy, J., herein because I do not believe that it can be reasonably held that officers and directors of a corporation become ipso facto personally liable for all of its subsequent obligations immediately after forfeiture of its corporate charter under Section 5091 for noncompliance with Sections 5085 and 5086. (References are to R. S. 1939 and Mo. Stat. Ann.) The commission, the trial court and the above opinion have all proceeded on the theory that the directors of Shelco Manufacturing Company must have begun its liquidation on January 1, 1940 (because of failure to register during 1939) or become ipso facto liable for all obligations of its corporate business thereafter incurred. This is an important question for the future because the 1939 sections applicable to this case have been reenacted in the new corporation code. (Laws 1943, p. 410.)

The effect of the above ruling is to enforce a statute which this court has held invalid. Section 5100; R. S. 1939, Mo. Stat. Ann. pro-

964

vided that officers and directors exercising corporate powers after such forfeiture "shall be held as partners and become severally and individually liable for the debts of such corporation." We held this provision unconstitutional because of defective title in Fidelity Adjustment Co. v. Cook, 339 Mo. 45, 95 S. W. (2d) 1162. The portion of Section 5100 which makes such exercise a misdemeanor remained in force, so that the state had this additional means of requiring such registration and enforcing payment of this tax. This part of the original section has since been reenacted in the new Corporation Code, Laws 1943, p. 474, Section 125, without any provision for liability as partners. If it took a statute to create liability as partners in this situation, how can this court enforce such liability ipso facto from date of forfeiture without any statute? At least some evidence of an actual partnership, joint adventure, individual operation or fraud on creditors should be required and the fact "that such corporation has not suspended its ordinary and lawful business" (see Sec. 5093) should not alone be sufficient to create such personal liability immediately on the date of forfeiture.

I do not think that every forfeiture of a corporation charter for such noncompliance makes the directors of such corporation ipso facto personally liable for its debts from and after December 31st of the year for which registration report, fees, and anti-trust affidavit were not sent in. Section 5091 (now Section 118 Corporation Code) only said that the powers, privileges, etc., of a corporation, in such default, "shall *subject to rescission* as in this article provided cease and determine." Section 5093 (now Section 120 Corporation Code) provided for rescission of such forfeiture as a matter of right during a one year period upon the payment of a fee of $50.00 and the showing of certain facts by affidavit or other proof. It also provided for rescission after that time, by payment of "the fees required . . . for original corporation." While the Secretary of State is authorized to "demand such other and further proof as he may deem necessary before rescinding any such forfeiture", no other facts are ▉▉▉ suggested as requiring proof in addition to the two matters set out in Section 5093, which might alternatively be the basis of the affidavit.

It seems to me that this at least gives the directors a reasonable time after December 31st, of the year in which default is made, in which to apply for rescission and that Section 5093 recognizes a period of one year as a reasonable time. It also recognizes that a longer period than one year might be a reasonable time at least under some circumstances. Certainly, with all of the reports and returns, State and Federal now required, it might be possible for officers of a corporation to inadvertantly overlook making this report and paying this fee; or at least for some of its directors to lack knowledge as to whether or not it had been done. There is no provision for any notice of delinquency until after forfeiture and cancellation of license by

the Secretary of State. Even then notice comes only to the corporation at its post office address (Section 5091) and not to its officers and directors personally. Of course, financial penalties against the corporation for such failures are proper; and likewise a corporation should not be entitled to continue in business indefinitely without doing so; but the specific provision for rescission within one year on payment of a small fee must mean something. I do not think it is reasonable to construe Section 5091 so drastically as to impose on directors immediate personal liability for corporate obligations, without actual notice to them, if they act in good faith and within a reasonable time to make good the delinquency and pay the necessary fee for reinstatement. The provision for rescission must mean that much.

Suppose a corporation continued to operate for a few weeks, or months, after receiving notice of December 31st forfeiture, and then obtained rescission within one year by payment of the fifty dollar fee. Would all directors be liable personally for all liabilities incurred between December 31st and rescission? Likewise, would corporate business contracts made during that period be invalid so that they could not be enforced by or against the corporation? These facts in Collier v. American Cafeteria Co., 215 Mo. App. 182, 256 S. W. 118, were held not to make such contracts invalid after reinstatement and it seems reasonable that the situation as to individual liability should be the same. See also Yerxa, Andrews & Thurston, Inc. v. Viviano (Mo. Sup.), 44 S. W. (2d) 98. Apparently the General Assembly has not considered such a forfeiture under Section 5091, as ending the existence of a corporation because, while retaining this provision (Section 118 of the Corporation Code, Laws 1943, p. 472, Laws 1945, p. 708), it has now provided that such forfeiture shall be a ground for dissolving it in an action brought for that purpose by the Attorney General. (Sec's. 84-87, Laws 1943, p. 457, Laws 1945, p. 711.) Since the new Corporation Code (Laws 1943, p. 471, Sec's. 114-126) also continues the other inconsistencies pointed out in the principal opinion, it would certainly be helpful if the General Assembly would clarify these statutes.

Furthermore, it seems to me that absolute forfeiture "subject to rescission" is a contradiction of terms and would amount to no more than a suspension of corporate powers. How can a forfeiture be absolute if it is conditional? If it is not an absolute forfeiture, what is it? Similar provisions have been enacted in many states, and their effect has been discussed in an article in 48 Yale Law Journal 650 in which it is said: "Here, as elsewhere, forfeitures are not favorites of the law. The effect of this idea upon the flexible, directive terminology employed by the varied statutes in fixing the penalty for violation has been to produce uniformity of interpretation. Whether the statute speaks in terms of 'forfeiture,' 'dissolution,' or 'suspension,' the majority of courts hold that there is at most but a suspen-

sion of the corporate powers." [See Mathews v. Life Ins. Co. of Detroit, 279 N. W. 858 (Mich. 1938); Deschutes Co. v. Lara, 127 Ore. 57, 270 Pac. 913 (1928); Real Estate-Land Title & Trust Co. v. Dildy, 92 S. W. (2d) 318 (Tex. Civ. App. 1936). For the contrary view see Young Construction Co. v. Dunne, 123 Kan. 176, [319] 254 Pac. 323 (1927).] It seems to me that, when our conflicting statutory provisions are construed together, the most reasonable construction is that forfeiture does not become absolute until a reasonable time for rescission has passed.

Therefore, I do not think that the forfeiture should be held to be immediately absolute or that the directors should be held to be personally liable for all corporate obligations until after the expiration of one year, at least in the absence of evidence of individual operation of the business or fraud upon creditors. In other words, I do not think there could be any personal liability upon the directors for only continuing the ordinary business of the corporation, in good faith in the same manner as it had previously been conducted, during the first year after default within which the statutory forfeiture could have been rescinded as a matter of right by filing the affidavit showing that it "has not suspended its ordinary and lawful business". Even giving this term the meaning of permanent termination by liquidation or otherwise, as does the principal opinion, I do think that all of these sections construed together can reasonably be held to impose personal liability upon directors ipso facto immediately upon default in all cases and under all circumstances. To do so would be to construe these penalty and forfeiture statutes in the most drastic possible way against those who might be subjected thereto, which is just the opposite of the usual rule of construction. [See 23 Am. Jur. 601, Sec. 5, p. 631, Sec. 37; 50 Am. Jur. 430, Secs. 407-408.] Moreover, even to say the provision of Section 5093, "has not suspended its ordinary and lawful business", may mean that the business of the corporation has not been permanently terminated a year or more after the time of forfeiture, under Section 5091, seems inconsistent with the ruling of the principal opinion that corporate existence is ipso facto completely terminated at that time and that directors have no authority except to immediately liquidate.

I think the judgment should be reversed and remanded with directions that appellants cannot be held liable personally for obligations of Shelco prior to the expiration of the first year after the forfeiture was declared without evidence of individual operation or fraud on creditors. *Ellison, J.*, concurs.