**GOLDEN SUN FEEDS, INC., Appellant,**

v.

**Earl DUGAN, d/b/a Dugan and Son Feed, Respondent.**

**No. WD35369.**

Missouri Court of Appeals, Western District.

Nov. 27, 1984.

Mulford & Cole, Kirksville, for appellant.

Keith W. Hicklin, Hicklin & Dial, Memphis, for respondent.

Before DIXON, J.P., and SHANGLER and CLARK, JJ.

DIXON, Judge Presiding.

Golden Sun appeals from a jury verdict for defendant in its action to recover on the defendant's guaranty of notes and on a second count based in contract. The issues presented involve admission of evidence and the propriety of an affirmative defense instruction.

Earl Dugan was a retail dealer for Golden Sun Feeds, Inc. Dugan and Golden Sun entered into a Dealer Finance Agreement. Dugan delivered feed to retail customers and took back a signed delivery ticket and invoice containing a promissory note for the customer to execute to Dugan as payee. He then indorsed the notes as guarantor and forwarded them to Golden Sun, which sent Dugan the notes' face amount. The delivered feed was the property of the dealer, which he purchased on open account from Golden Sun. There was originally a count in Golden Sun's petition claiming Dugan owed on the open account, but the trial court granted Dugan summary judgment on that count. The arrangement on the handling of the notes was thus very similar to any financing plan in which customer notes are assigned to a lender and guaranteed by the merchant. The transaction was simply a sale of the "paper."

In 1980, the Welsh Bros. Grain & Livestock Co. executed 19 such notes, which Dugan indorsed and forwarded to Golden Sun, receiving their face value in return. The notes each stated an 11% interest rate and had different maturity dates. Welsh Bros. did not pay off the notes. On April 1, 1981, Welsh Bros. executed a promissory note to Golden Sun for a sum equal to the principal and interest on the 19 notes. It had an 18% interest rate, monthly payments of $2,000 a month, and the balance was due on April 1, 1982. The Welshes individually signed the note and individually guaranteed its full payment. Dugan did not know about or consent to the new note. In 1981, before the notes were executed, Welsh Bros. lost its corporate status. The Welshes individually went into bankruptcy. Golden Sun filed against Dugan in two counts. Count I was based on a theory of note guarantee. Count II pleaded a cause of action under the retail sales agreement. The counts were alternative theories for the recovery of the same amount.

█ The plaintiff first complains that the trial court erred in admitting a photocopy of the April 1 note. Plaintiff urges that his objection to admission of the note on the grounds of violation of the best evidence rule should have been sustained. The photocopy was admitted during the cross-examination of a witness for plaintiff, one Sawyer, plaintiff's credit manager. In pretrial discovery, defendant had requested documents, and a copy of the note had been produced. At Sawyer's deposition, a copy was attached and he was questioned on the issue. There is no claim made that the copy varied from the original in any respect. The content of the document is no wise in dispute. The only issue is the legal effect of the April 1 note. When the best evidence issue first arose during cross-examination, the colloquy and questioning demonstrated the original note was in the office of plaintiff's counsel, some 20 miles from the site of the trial. Plaintiff's counsel and defendant's counsel met with the trial court to consider pretrial matters at 7:45 a.m. on the day of trial. Plaintiff filed a so-called "motion in limine" raising the legal issue concerning the admission of the note, but not raising the issue of the best evidence rule. It is obvious the best evidence rule objection was either on the spur of the moment, an afterthought, or an attempt to "sand bag" on the issue.

In these circumstances the trial court was well within its discretion in refusing to apply the stricture of the best evidence rule. *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 925 (Mo. banc 1981). There is no issue as to authenticity or accuracy, as both plaintiff's credit manager and a maker of the note identified the exhibit as a true copy of the original.

In three separate points, the plaintiff asserts additional error in the admission of the April note. First, the plaintiff argues that the note was invalid and of no legal force or effect because it purported to be a corporate obligation of Welsh Bros. Grain and Livestock Co., a corporation that had forfeited its charter three months prior to the execution of the note.

■ Contrary to Golden Sun's assertion, the April note had legal effect and was properly admitted despite Welsh Bros. having already forfeited its charter. The board and officers had no authority to transact new business in the corporation's name, but, under Section 351.525 RSMo 1978, as statutory trustees they are held jointly and severally liable for all obligations so incurred. *State ex rel. Jay Bee Stores, Inc. v. Edwards*, 636 S.W.2d 61 (Mo. banc 1982); *Leibson v. Henry*, 204 S.W.2d 310 (Mo. banc 1947). The note was not a void instrument; it had vitality and was enforceable against the statutory trustees, as well as against the individuals who signed as co-makers of the note.

Golden Sun also asserts error in permitting testimony about the execution and delivery of the April note on the ground of irrelevancy. As best this may be understood, Golden Sun is claiming the April note could not affect either the Count I claim for guarantee or the Count III claim on the dealer contract. Dugan's liability as a guarantor was extinguished on two different bases.

■ Welsh Bros. executed the April note without the knowledge or consent of Dugan, the guarantor on the original 19 notes. The terms of the April 1 note were different from those of the original 19; including different interest rates, different maturity dates on the debt, and different modes of payment. There were also different parties. Because the guarantor did not consent to a materially different obligation, his liability on the notes was discharged. *Eberly v. Lehmer*, 48 S.W.2d 151 (Mo.App. 1932).

■ The jury could likewise have found that when Golden Sun accepted the April 1 promissory note from Welsh Bros., the debtors' liability on the 19 original notes was extinguished. Robert Welsh, one of the guarantors on the note, testified that he believed the new note was intended to replace the original notes and, pursuant to the conditions of the note, Golden Sun accepted two payments, of $2,000 each. This is sufficient to permit the jury to infer that the parties agreed the second note was given to extinguish the obligation on the prior notes because "... such an agreement is not required to be shown by direct testimony but the agreement or intention may be inferred, as in the case of other contracts, from the facts, circumstances, and conduct of the parties." *Wolfson v. Baltimore Bank of Kansas City*, 157 S.W.2d 560, 566 (Mo.App.1942).

In urging that the defendant's affirmative defense instruction was erroneous, Golden Sun first argues there was no evidence to support the instruction.

■ To support this, Golden Sun recasts its argument with respect to the admissibility of the subsequent note. Golden Sun argues the April note was not evidence of payment and thus could not support the instruction given. What has heretofore been stated is a sufficient answer to this branch of the argument. There was enough in this record to permit a jury finding that the subsequent note was given to and accepted by Golden Sun as payment for the 19 feed notes of Welsh Bros.

Golden Sun further argues that the question of payment of the 19 feed notes is irrelevant to the issues under the contract. It is their position that the payment to the defendant of the face amount of the 19

feed notes gave rise to a separate contractual right independent of the guaranty on the notes.

The contract language in relevant part is as follows:

Upon the *due date of any note or contract,* the Dealer will be required to forward to GOLDEN SUN FEEDS, INC. the face value of the note plus interest for the term of the note. It should be noted that the due date shown on the note is the responsibility of the Dealer to GOLDEN SUN FEEDS, INC. and will have no bearing on whether or not the farmer has paid his obligation to the Dealer. It is agreed by the Dealer that it is his responsibility to forward to GOLDEN SUN FEEDS, INC. the face value of the note plus interest on or before the due date. The status of the settlement of this note between the GOLDEN SUN DEALER and his customer will have no bearing on the settlement of this note between GOLDEN SUN FEEDS, INC. and the GOLDEN SUN DEALER.

■ Under this language, the nonpayment of the 19 feed notes is critical to the creation of the contract right. If those notes were paid, the contract creates no further right. The contract is, in effect, a rescript of the note guarantee. There is no suggestion that Dugan in any way settled or compromised the notes. The issue of liability was properly submitted to the jury and the affirmative defense of payment was likewise properly submitted.

Golden Sun cites *Popovsky v. Griwach,* 238 S.W.2d 363 (Mo.1951), in support of its arguments. That case involves a suit by the payee of a note against the maker and a claim that the delivery of notes by third parties constituted payment. It is wholly different factually than the instant case. *Wolfson, supra,* is much more analogous factually and its principle controls in this case.

The verdict and judgment are affirmed.

All concur.