**BODINE ALUMINUM COMPANY, INC., Plaintiff/Respondent,**

v.

**Harlin MITAUER, Individually and as Statutory Trustee of East Side Metals, Inc., and Louis Mitauer, Individually and as Statutory Trustee of East Side Metals, Inc., and Bernice Mitauer, Individually and as Statutory Trustee of East Side Metals, Inc., Defendants/Appellants.**

No. 55700.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 12, 1989.

Donald V. Nangle, St. Louis, Mo., for defendants/appellants.

W. Donald Dubail, Terry A. Parkinson, St. Louis, Mo., for plaintiff/respondent.

GRIMM, Judge.

In this jury-tried action on an account, defendants, Harlin, Louis, and Bernice Mitauer, appeal the judgment entered against them individually and as statutory trustees of East Side Metals, Inc., in favor of plaintiff Bodine Aluminum Company, Inc., for $17,064.36. We affirm.

The three defendants raise one point. They assert the trial court abused its discretion "in allowing speculation by [Bodine] as to the weight of the scrap aluminum and fixing of price for an eight (8) month period in a market that was not stable and departing from the prior custom established with defendant Mitauer in fixing the price within thirty (30) to forty-five (45) days of the transaction." We disagree, because there was sufficient evidence for the jury to determine the amount owed.

Defendants Harlin and Bernice[1] also raise a point concerning the judgment rendered against them. They allege the judgment "should be overturned as neither of these defendants, individually or as statutory trustees of a defunct corporation, had any dealings with [Bodine] or knew anything about the account." We disagree, because as officers of a corporation which had its charter forfeited, they failed to take any steps to wind up the corporation's business and therefore, are personally liable for the corporation's debts.

East Side was a Missouri corporation. In November, 1984, its charter was forfeited. On East Side's last annual registration report, signed by Louis, the three defendants were listed as officers and directors. Although East Side's charter was forfeited, the business continued to operate.

East Side and Bodine had a business relationship for about eight years. Pursuant to an oral agreement originally negotiated by Harlin, East Side hauled aluminum scrap and trash from Bodine's place of business. The scrap, consisting of dross and grindings,[2] was resold by East Side on a secondary market.

About 30–45 days after picking up the scrap, East Side would pay Bodine a portion of the scrap's estimated selling price. After East Side sold the scrap, it paid Bodine the balance owed.

Bodine's petition claimed that "[b]etween the dates of January 15, 1985 and August 9, 1985 [East Side] purchased from [Bodine] certain merchandise for which [East Side] agreed to pay" a reasonable price. A reasonable price, Bodine claimed, was $27,202.18. Acknowledging that East Side had paid $10,137.82, Bodine claimed a balance due of $17,064.36.

■ The three defendants allege "the trial court abused its discretion in allowing speculation by [Bodine] as to the weight of the scrap aluminum" and its price. Since that testimony was received without objec-

tion, we construe defendants' first point to be challenging the sufficiency of the evidence.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence "in the light most favorable to plaintiff, giving [it] the benefit of all reasonable inference[s] and disregarding defendants' evidence except as it may support the verdict." *Marshall v. Edlin,* 690 S.W.2d 477, 479 (Mo.App.W.D.1985).

Bodine's vice president testified that Bodine's agreement with East Side called for East Side to haul Bodine's trash at no charge to Bodine. In consideration of that service, East Side paid Bodine "a price at somewhat less than the fair market price" for the scrap. In 1985, East Side was paying five cents a pound for dross and nine cents a pound for grindings. Tickets indicating the number of containers of scrap picked up by East Side were received in evidence. Bodine's vice president testified as to the average weight of the scrap in the containers.

This testimony constituted sufficient evidence to enable the jury to make the necessary calculations to determine the amount East Side owed Bodine. Since the correctness of the account depended upon oral testimony in plaintiff's behalf, " 'the question whether such testimony was to be believed was for the jury.' " *O'Connor v. Egan,* 274 S.W.2d 334, 338 (Mo.App.S.D. 1955) (quoting *S.J. Travis & Co. v. Means,* 192 S.W. 119, 120 (Mo.App.W.D.1917)).

Defendants argue Bodine "was allowed, over the objection of [East Side], to use wildly speculative damaging calculations." To the contrary, Bodine's testimony of five and nine cents a pound was in response to questions as to what East Side was paying "during this particular time period." This testimony, along with the tickets showing the number of containers, was received without objection. Finally, evidence of the average weight of scrap in the containers

---

1. We refer to the parties by their first names for ease of identification, and not out of disrespect.

2. Aluminum dross is aluminum trapped inside an oxide skin which forms on the outside layer of molten aluminum. The dross is scraped off the molten aluminum. Aluminum grindings are the soft filings produced when excess aluminum is removed from a casting.

was also received without objection. Point denied.

■ The point relied on raised by defendants Harlin and Bernice is: "Judgment against Harlin and Bernice Mitauer should be overturned as neither of these defendants, individually or as statutory trustees of a defunct corporation, had any dealings with the plaintiff or knew anything about the account."

Section 351.525, RSMo 1986, provides:

If any corporation: (1) Fails to comply with the provisions of this chapter with respect to its annual registration ... the corporate rights and privileges of the corporation shall be forfeited, ... and the secretary of state shall notify the corporation ... that its corporate existence and rights in this state have been forfeited and canceled, and the corporation dissolved subject to rescission as provided in this chapter; and the directors and officers in office when the forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind up its business and affairs, ... and the trustees as such shall have power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such; and the trustees shall be jointly and severally responsible to the creditors and shareholders of the corporation to the extent of its property and effects that shall have come into their hands.

This statute places a limit on the liability of officers and directors as they wind up the affairs of a corporation after its corporate rights and privileges have been forfeited. When, however, the officers and directors continue to operate the business after forfeiture, individual liability may be imposed on them. *See, e.g., Leibson v. Henry,* 204 S.W.2d 310, 316 (Mo.banc 1947); *Mitchell v. Director of Revenue,* 619 S.W.2d 352 (Mo.App.E.D.1981); *Borbein, Young & Co. v. Cirese,* 401 S.W.2d 940 (Mo.App.W.D.1966).

We also observe that § 351.525 places a responsibility on the officers and directors, in winding up the corporation's business, to pay its debts and distribute the net assets. None of the defendants presented any evidence establishing what corporate assets, if any, they received, or the disposition of those assets.

Harlin and Bernice argue that there was no showing that they were involved in the transactions with Bodine in 1985. They do not, however, dispute that they were listed as officers of the corporation. Rather, they argue that the rule which imposes personal liability on statutory trustees when a corporation is operated after forfeiture is too strict.

Although at first blush this rule seems harsh, § 351.540, RSMo 1986, provides a means to avoid this perceived harshness. Under that section, any officer or director may avoid personal liability after a corporation's charter has been forfeited. To do so, an officer or director must file an affidavit stating that the conditions giving rise to the forfeiture have been remedied. The secretary of state may then rescind the forfeiture, and the restoration of the charter has effect from the original date of forfeiture. § 351.540.2; *A.R.D.C. Inc., v. State Farm Fire & Cas. Co.,* 619 S.W.2d 843, 846 (Mo.App.W.D.1981); Annotation, *Reinstatement of Repealed, Forfeited, Expired, or Suspended Corporate Charter as Validating Interim Acts of Corporation,* 42 A.L.R. 4th 392 (1985).

This remedy, however, is not available when, as here, a personal judgment has been obtained against a statutory trustee prior to recision of a forfeiture. For § 351.540.2 provides that "any judgment obtained against any person" shall not be vacated by recision of the forfeiture of the corporation's charter.

All parties agree that East Side's charter was forfeited on November 1, 1984. All three defendants then became statutory trustees for the purpose of "winding up" the affairs of the corporation. "When no effort was made to wind up, all post-forfeiture debts became the personal liability of the trustees." *Mitchell,* 619 S.W.2d at 353.

The record is devoid of any indication that defendants either sought or obtained

rescission of the forfeiture under § 351.540. A valid judgment was entered against defendants as both individuals and statutory trustees, and that judgment is affirmed.

SATZ, P.J., and SMITH, J., concur.