Joseph E. Johnson, Thomas M. Johnson, Maud Davis and Jean A. Ogg v. Rebecca B. Moore et al., Defendants, Walter L. Llafet, William B. Llafet, Sr., Joseph E. Llafet, Mamie G. Llafet, Cora F. Llafet, as Guardian and Curatrix of Frances Elizabeth Llafet and Samuel Edward Llafet, Minors, William B. Llafet, Sr., as Administrator of the Estate of Lemuel L. D. Llafet, Belle Fowler and Geneva Melton, Appellants.—143 S. W. (2d) 254.

Division Two, September 27, 1940.

*Earl C. Borchers* and *Albert D. Menefee* for appellants.

*Rogers & Penniston* and *David A. Thompson* for respondents.

BOHLING, C.—Joseph E. Johnson and others instituted this action on August 21, 1937, to quiet title to the North half of the Northeast quarter of Section 11 (except one-half acre thereof reserved for a grave yard) and the North half of the Northwest quarter of Section 12, Township 52, Range 28, West, in Ray county, Missouri. They assert title here under adverse possession and the trial court so adjudged. Defendants Lemuel L. D. Llafet, Belle Fowler and Geneva

Melton appealed. They question the judgment only in so far as it affects the title to the real estate situate in Section 11—the "West 80."

Lemuel Boone is the common source of title. He died testate in 1876, leaving surviving as his heirs at law his four children, viz.: William S. Boone, Martha Jane Griffey, Elizabeth Banister, and Sarah Llafet. Lemuel Boone devised one-fourth of his real estate to each of his four children for life, with remainder over. Sufficient for the purposes of this review, the nature of the gift to each of his said children may be had from the following excerpts of his will, to-wit:

"Third. I will and bequeath to each of my children, to-wit: . . . My daughter Martha Jane Griffey, wife of William Griffey, for and during her natural life one-fourth part of all my property real personal and mixed, to her own sole and separate use independent of her present or any future husband, afterwards in remainder to her children if she should have any, if not, then her interest share and estate shall go to and be divided among her brother and sisters then living or their descendants. . . .

"It is further expressly understood that it is my full will and purpose that my said property herein and hereby willed and devised shall go to my children and not to their husbands or wife, that each of them may after my death have and enjoy the property for and during their lives and afterwards that the same shall go to their children where they shall have any, if not, then the property shall be held by those of them yet alive or their children or their descendants.

"It is my will that if my said children shall all agree thereto may sell and dispose of my said real estate and reinvest the means arising from the sale of the same, or have the same loaned out on good security and the same shall be done in the name and by the Executor of my last will and testament and if sold after my estate shall be settled up then he as trustee shall be invested with the power and authority to sell the same and the proceeds of the same shall be held and kept and disposed of as herein provided except, the issues or income arising from the same which shall go to each one as herein above provided."

Each of said children of said Lemuel Boone died intestate and, except said Sarah, childless. We understand the heirs of Lemuel Boone and his daughter Sarah, as of the date of trial, were: Lemuel L. D. Llafet, a son of said Sarah. Belle Fowler, a granddaughter of said Sarah and a daughter of Augusta A. Gant, deceased. Geneva Melton, a granddaughter of said Sarah and a daughter of Sarah Waring, deceased. John Banister, a grandson of said Sarah and a son of Eva Banister, deceased. Lamuel L. D. Llafet, Belle Fowler and Geneva Melton filed answers. They claim that each, with said John Banister, is entitled to an undivided one-fourth interest in said North half of Section 11.

After the death of Lemuel Boone suits were instituted contesting his said will and for a partition of his said estate among said life tenants. Respondents admit there were certain imperfections in said proceedings. However, they appear to have been consolidated and judgments entered at the November Term, 1877, of the Circuit Court of Ray county, Missouri, purported to adjudicate said controversies. The judgment in the partition suit was a dismissal. The purported judgment in the will contest recites that it is subject to the rights of any future issue of Sarah Llafet, Elizabeth Banister, and Martha Jane Griffey; that Lemuel L. D. Llafet, Augusta A. Gant, Eva Banister and Sarah Waring (children of Sarah Llafet) entered their voluntary appearance, and that the judgment was entered under the agreement and with the consent of all parties. It vested an absolute fee to seventy-five acres (not here involved) of the estate of Lemuel Boone in Lemuel L. D. Llafet, Augusta A. Gant, Eva Banister and Sarah Waring, in equal parts, and the fee to the balance of said estate in said Lemuel Boone's children in equal parts, subject to the rights of any future issue as aforesaid.

After said judgment said children of Sarah Llafet (Lemuel, Augusta, Eva and Sarah) entered into the possession of the real estate set off to them under said decree. Thereafter Lemuel, by various deeds, acquired the interests of his sisters in sixty-four acres thereof and by warranty deed, dated July 25, 1892, conveyed the same to Caleb Jackson for the recited consideration of $2,000.

On November 25, 1878, Martha Jane Griffey and husband acquired the title of her brother and sisters to the Northwest quarter of the Northeast quarter and Mary E. Banister and husband acquired the title of her brother and sisters to the Northeast quarter of the Northeast quarter of Section 11, here involved, under quitclaim deeds. Henry Page acquired said Northeast quarter from Mary E. Banister on ·August 6, 1880, and acquired said Northwest quarter from Martha Jane Griffey on April 28, 1881, under warranty deeds. Henry Page died intestate in 1882 and the land in Section 11 was set off to two of his heirs, to-wit, Nelle Page and Thompson Page. Nelle, under warranty deed dated April 13, 1887, acquired the interests of said Thompson, and on February 13, 1891, by warranty deed, conveyed to Caleb Jackson. On October 8, 1898, Caleb Jackson, by warranty deed, conveyed the same to Madison Johnson and wife, for the recited consideration of $6,600. Respondents are the sole heirs of Madison Johnson, who survived his wife and died intestate. These warranty deeds were recorded and, we understand, promptly recorded.

Henry Page, upon the purchase of the land, entered into possession and he and his grantees, including the plaintiffs, have been in the possession thereof since said date and have paid all taxes assessed against said land.

The foregoing is taken from an agreed statement of facts.

Trial was had on November 12, 1937. There was testimony that the house was located on the "East 80;" that is, in Section 12; that all the land, the North half of Section 11 and the North half of Section 12, was fenced and had been fenced for fifty years; that the respective grantees made the land their home; that when Caleb Jackson owned it he farmed the land, and that the present tenant had been paying rent to Madison Johnson and his heirs for eighteen years.

Martha Jane Griffey died in 1881. Sarah Llafet died in 1889. William S. Boone died in 1902. Eva Banister died August 22, 1917. Respondents say the remainders supported by the life estates, suit having been instituted August 21, 1937, are barred by the "thirty-one" year Statute of Limitations (Sec. 856, R. S. 1929, Mo. Stat. Ann., p. 1131) and by the ten-year Statute of Limitations (Sec. 850, R. S. 1929, Mo. Stat. Ann., p. 1121).

The several warranty deeds, promptly recorded, in respondents' chain of title covenanted that the respective grantors were seized of an indefeasible estate in fee, had good right to convey and would warrant and defend said fee title, et cetera. The respective grantees covenanted for such a title and Madison Johnson and his wife paid Caleb Jackson $6600 therefor. The payment of taxes, especially after the death of Eva Banister, by respondents was evidence of respondents' claim of ownership of the fee. [Woodside v. Durham, 317 Mo. 15, 40, 295 S. W. 772, 783[6].] The North half of Section 12 aforesaid on which the house was situated and the North half of Section 11 aforesaid did not constitute separate farms under this record. All had been under fence for years. The several owners occupied the premises as their home. For eighteen years Madison Johnson and his heirs have collected the rents for the use and occupancy of Section 11 by their tenant. "No more affirmative act of ownership can be asserted than the rental of the land . . . and the collection of the rents thereon." [Jamison v. Wells (Mo.), 7 S. W. (2d) 347, 348[4].] Under the agreed statement of facts respondents or their predecessors in title have been in possession since 1881. "The visible indicia of possession is notice, and notice is equivalent of knowledge of all that would be learned by reasonable inquiry." [Langford v. Welton (Mo.), 48 S. W. (2d) 860, 863[2], citing cases. See also Boyce v. Missouri Pac. Rd. Co., 168 Mo. 583, 593, 68 S. W. 920, 923, 58 L. R. A. 442.] Clearly respondents' possession subsequent to the death of Eva Banister was not a friendly possession to the remaindermen but hostile and adverse. It was under a claim of right, actual, open, notorious, exclusive and continuous. [King v. Theis, 272 Mo. 416, 422, 199 S. W. 183, 184[4].]

Appellants say: "The fee title in remainder vested in the children of Sarah Llafet immediately upon the death of Lemuel Boone." They then had the power to alienate the said fee. The observations in Coulson v. La Plant (Mo.), 196 S. W. 1144, 1147[4], that no act of a

life tenant can make the life tenant's possession adverse to the remainderman or reversioner, and a life tenant's conveyance transfers only the life tenant's tenure, are not applicable to the instant facts; because the judgment of 1877 was had under an agreement and with the consent of the remaindermen under whom respondents claim and the life tenants; on its face the judgment merged the life estate and the fee simple estate of the remaindermen here involved in said life tenants; and, although imperfections existed in the court proceedings, respondents and their predecessors in title were vested with a color of title to the fee. "Although the instrument under which color of title is claimed may be actually void and convey no title, if it purports on its face to convey the title to the land in question by appropriate words of transfer it will constitute color of title." [Jamison v. Wells (Mo.), 7 S. W. (2d) 347, 348[6], citing cases.]

"The law is well settled that the possession of a part of a tract of land with a claim of the whole, with the usual acts of ownership over the entire tract, establishes possession of the whole, and such possession will ripen into title under the Statute of Limitations." [Schofield v. Harrison Land & M. Co. (Mo.), 187 S. W. 61, 64[10]; Cashion v. Merredith, 330 Mo. 970, 976[6], 64 S. W. (2d) 670, 673[8]; Sec. 854, R. S. 1929, Mo. Stat. Ann., p. 1129.]

Respondents have filed a motion to affirm the judgment or dismiss the appeal. Since the judgment should be affirmed, let the motion be overruled with the expressed reservation that we refrain from passing on the merits thereof.

The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.