LAND CLEARANCE FOR REDEVELOP-
MENT AUTHORITY OF the CITY
OF ST. LOUIS, Plaintiff,

v.

Georgia ZITKO et al., Defendants,

St. Louis Argus Publishing Company, a Corporation, and Nannie Mitchell Turner,
Defendants-Respondents,

Edwina W. Mitchell, Intervenor-Appellant.

No. 49980.

Supreme Court of Missouri,

En Banc.

Dec. 14, 1964.

Rehearing Denied Jan. 11, 1965.

Sidney R. Redmond, Henry D. Espy, St. Louis, for appellant.

David M. Grant, St. Louis, for respondents.

STORCKMAN, Judge.

This is an ancillary proceeding to determine the distribution to be made of the sum of $43,500 paid into court as compensation for the taking by condemnation of the land and improvements numbered 2312–14–16 Market Street in the City of St. Louis. The condemnation action proper has been concluded at least as far as this particular property is concerned. The defendant St. Louis Argus Publishing Company, a corporation, claims the entire fund as sole owner at the time the real estate was taken by the plaintiff Land Clearance for Redevelopment Authority as a part of the Mill Creek redevelopment project. The intervening defendant Edwina W. Mitchell claims ⅘ths of the fund. She claims ⅖ths as a former shareholder of Mitchell Realty and Investment Company, a corporation, now defunct by reason of the forfeiture of its charter. She claims an additional ⅖ths of the fund as the residuary legatee under the will of her husband who was also a shareholder of the Mitchell Company. The defendant Nannie Mitchell Turner, also a shareholder in the Mitchell Company, disclaims any interest in the fund and supports the claim and contentions of defendant St. Louis Argus Publishing Company. The trial court heard the case without a jury, found the issues against the intervenor Edwina W. Mitchell, and held that St.

Louis Argus Publishing Company was entitled to the entire fund. The intervenor has appealed.

The cause was heard on the first amended intervening petition of Edwina W. Mitchell and the second amended cross-complaint of the St. Louis Argus Publishing Company, a corporation, and responsive pleadings. For convenient reference and ease of distinction, the land and improvements condemned will sometimes be referred to as the Argus property or building; the St. Louis Argus Publishing Company will sometimes be referred to as Argus or the Argus Company; the Mitchell Realty and Investment Company as Mitchell Company; Mrs. Edwina W. Mitchell as Mrs. Edwina or the intervenor; and Mrs. Nannie Mitchell Turner as Mrs. Nannie.

■ The Argus Company relies on corporate minutes and a recorded deed of Mitchell Company as the basis of a claim under color of title and predicates its title on adverse possession, estoppel and laches, and prays that the title be quieted. The intervenor contends the recorded deed is invalid, that it is a cloud on the title and should be declared void. She also seeks an accounting of the rents and the proceeds of fire insurance coverage on the building. Apart from other possible grounds, appellate jurisdiction is in this court because of the amount in dispute since the ⅚ths of the fund claimed by the intervenor is at least $19,115. Art. 5, § 3, Constitution of Missouri 1945, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S.

It is undisputed that Argus Company originally acquired the real estate in question on May 11, 1922, by a warranty deed duly recorded. It occupied the first floor of the premises for the publication of the St. Louis Argus, a leading Negro newspaper in St. Louis. Offices on the second floor were rented to various tenants. Argus Company lost the property through foreclosure in 1939. On October 3, 1939, the sheriff of the City of St. Louis, as successor trustee under a deed of trust, conveyed the property to Lena Traub, the purchaser at the foreclosure sale. In this connection Argus Company also executed and delivered a quitclaim deed dated September 30, 1939, to Lena Traub who was the holder of the notes and deed of trust on the property. By a general warranty deed dated February 17, 1942, Lena Traub conveyed the property to Mitchell Realty and Investment Company, a corporation. The balance of the purchase price was secured by a deed of trust.

Mitchell Realty and Investment Company was organized as a Missouri corporation on February 6, 1942. The shareholders named in the articles of agreement were Joseph E. Mitchell, Edwina Mitchell, William Mitchell and Nannie Mitchell, each the holder of four shares, and George L. Vaughn, the holder of two shares. These five shareholders also constituted the first board of directors. The capital stock of $2000 was divided into 20 shares of the par value of $100 per share; half of the capital was paid in money to the persons named as the first board of directors. J. E. Mitchell and William Mitchell were brothers. Nannie Mitchell was the wife of William. J. E. Mitchell, a widower, married Edwina in 1940. George L. Vaughn, a lawyer, represented the parties at the time. The charter of the Mitchell Company was forfeited by the secretary of state on January 1, 1946, for failure to file its annual registration statement and antitrust affidavit.

Over the objection of the intervenor, the respondents introduced in evidence a document purporting to be a set of corporate minutes of Mitchell Company and a general warranty deed from Mitchell Company purporting to convey the real estate in question to the Argus Company. The minutes, respondents' exhibit G, purported to record the proceedings of a meeting of the Board of Directors of Mitchell Company held "At ——— o'clock ——— m, October ———, 1944," and recited, inter alia:

"The chairman announced that the business of the meeting to come before the

directors at this time was the question of selling the property belonging to the company and located at 2312–14–16 Market Street in the City of St. Louis and State of Missouri to the St. Louis Argus Publishing Company, and the liquidation of the debt on said property to the extent of the amount of money on hand by applying the same on the incumbrance on said property.

"The property above referred to is more particularly described as follows:

[Legal description omitted.]

"Subject to the balance due on a deed of trust now of record, and to the restrictions and conditions and easements of record.

"The following resolution was then offered:

"Be it resolved, That the above described property be this day sold to the St. Louis Argus Publishing Company for the sum of Ten Dollars and other valuable considerations, including the assumption of the balance of the incumbrance on said property, after deducting the amount of the payments to be made thereon by this company, and be it further resolved that the Mitchell Realty and Investment Company shall apply and pay on the liquidation of said encumbrance the entire amount of money now on hand and belonging to said company, including said ten dollars to be received from said St. Louis Argus Publishing Company."

The warranty deed, respondents' exhibit C, dated May 27, 1950, and filed and recorded in the office of the Recorder of Deeds of the City of St. Louis on June 20, 1950, purported to convey the property from Mitchell Realty and Investment Company, a corporation, to the St. Louis Argus Publishing Company, a corporation. The minutes, exhibit G, purported to be signed by William Mitchell as chairman and attested by Edwina W. Mitchell as secretary. A waiver of notice appended thereto, purported to be signed by the five directors named in the articles of incorporation of Mitchell Company, including Mrs. Edwina.

The deed, exhibit C, purported to have been signed by Mrs. Edwina as president of Mitchell Company. She denied that she signed either document and asserted that she was not in St. Louis during October 1944. These two instruments will be further discussed in connection with Mrs. Edwina's claim of error with respect to their admission.

The Argus Company continued to occupy the first floor of the building as business quarters for the publication of its newspaper until April 4, 1961, when the condemnor took possession and the Argus Company moved to new quarters at 4595 Easton Avenue. While in possession of the property from 1950 until it moved in 1961, and prior thereto, the Argus Company paid no rent to Mitchell Company or anyone else. It collected the rents from the officers upstairs and kept the proceeds as a part of its own funds. It made and paid for improvements to the building and paid the real estate taxes on the premises. Two fires occurred that damaged the building, one in 1950 and the other in 1960. The policies of insurance were evidently in the name of Argus Company because it collected for the fire losses and used at least a portion of the proceeds to repair and restore the building.

The brothers, J. E. Mitchell and William Mitchell, were the principal shareholders of Argus Company. Both had been active in the business from the beginning. Together they owned 740 of the 774 shares outstanding. William died March 10, 1945, and J. E. died December 17, 1952. Under date of March 16, 1953, an agreement was entered into by Edwina W. Mitchell, the widow of J. E. Mitchell, J. Orvel Mitchell, a son of J. E. Mitchell by a former marriage, Nannie Mitchell Turner, the widow of William Mitchell, and Frank W. Mitchell, a son of William and Nannie Mitchell. By this agreement the parties agreed to exercise their voting rights as shareholders of Argus Company to elect themselves directors of the company and as directors to elect themselves to the corporate offices therein speci-

fied and to further cooperate in other particulars with respect to the operation of the Company. The agreement was followed at the shareholders' meeting in March 1953 and Mrs. Edwina became chairman of the board and treasurer; she was authorized to sign checks along with Mrs. Nannie, the president. Mrs. Edwina was active in the management of Argus Company until December 1955 when she was removed as the result of litigation which culminated in an appeal to this court. See Turner v. Mitchell, Mo., 297 S.W.2d 458. Thus, during this period of time at least, Mrs. Edwina not only had an opportunity to observe the acts of Argus Company consistent with adverse possession and a claim of ownership of the premises, but she also took an active part in them. Scarcely any records of Mitchell Company could be found and some of Argus Company appeared to be missing. There was testimony that such records had been kept in a safe in the office of Argus Company to which three persons had access including Mrs. Edwina and Mrs. Nannie. Also there had been two fires. There was, however, a cancelled check in payment of the 1953 real estate taxes put in evidence. It was conceded that this check was signed by Mrs. Edwina and Mrs. Nannie.

The evidence showed that Mitchell Company opened a checking account with the Industrial Bank (now the Bank of St. Louis) on January 16, 1943, with a deposit of $1500. The persons authorized to sign checks were Edwina Mitchell, president, and William Mitchell, secretary. The only record the bank could find was the signature card. Mrs. Edwina admitted the signature appearing on the card was hers. The intervenor produced a bank statement, exhibit 9, showing a balance of $1170.95 on December 31, 1943; a deposit of $2000 was made on January 4, 1944, bringing the balance to $3170.95 on that date. This appeared to be the only available financial records of the Mitchell Company. The bank account was closed on December 28, 1944, but the evidence does not disclose what disposition was made of the money.

The principal disputed fact questions pertained to the holding of the meeting of the board of directors of Mitchell Company in October 1944, the execution of the minutes of such meeting and the execution of the deed dated May 27, 1950, purporting to convey the property to Argus Company. Although Mrs. Edwina denied signing either document, Mrs. Nannie testified she was present at the signing and saw Mrs. Edwina sign the minutes and the waiver attached thereto. Frank A. Weathers, a notary public, testified that he saw Mrs. Edwina and Mrs. Nannie sign the deed of May 27, 1950, purporting to convey the premises from Mitchell Company to Argus Company, and that he affixed the acknowledgment to the deed. Checks and other documents bearing admitted signatures of Mrs. Edwina were received in evidence as standards for comparison. To the extent necessary, other evidence will be referred to in connection with the points presented for decision.

On April 20, 1962, the intervenor filed her motion for a change of venue on the ground that the St. Louis Argus Publishing Company "has an undue influence over the inhabitants of the City of St. Louis". S.Ct. Rule 51.03(a), V.A.M.R. and § 508.090(2), RSMo 1959, V.A.M.S. The Argus Company filed a counter-affidavit controverting the allegations of the motion and denying that it had an undue influence over the inhabitants. In the trial court the intervenor contended, as she does here, that she had an absolute right to a change of venue to another county and that no counter-affidavit was permitted in these circumstances. The intervenor refused to offer testimony at the hearing and objected to the testimony offered by the Argus Company. After the hearing, the trial court announced its intention to overrule the intervenor's motion and to deny her motion to strike the counter-affidavit. Thereupon, the intervenor sought a writ of prohibition in this court which was No. 49,655, State ex rel. Edwina W. Mitchell, Relator, vs. Honorable James F. Nangle, Respondent. The respondent filed suggestions in opposition and this court

entered its order on September 10, 1962, denying the writ. The trial court then entered its order overruling the motions.

In counties having more than 75,000 inhabitants, an application for a change of venue to another county on the ground of undue influence over or prejudice of the inhabitants of the county may be controverted by the adverse party and the court is entitled to hear evidence on the issue and determine the same on the merits. S.Ct. Rule 51.07 and § 508.140, RSMo 1959, V.A.M.S. The City of St. Louis is a county within the meaning of this rule and statute. Section 1.080, RSMo 1959, V.A.M.S. The contention is clearly without merit. The trial court did not err in hearing evidence and determining the merits of this kind of motion for a change of venue. State ex rel. State Highway Commission of Missouri v. Curtis, 365 Mo. 447, 283 S.W.2d 458, 464 [4, 5]; State ex rel. Kansas City Public Service Company v. Waltner, 350 Mo. 1021, 169 S.W.2d 697, 703 [7, 8]; Eudaley v. Kansas City, Ft. S. & M. R. Co., 186 Mo. 399, 85 S.W. 366, 367 [2].

Thereafter, on September 17, 1962, the intervenor filed a second application designated a motion for change of venue based on the allegation that the St. Louis Argus Publishing Company had an undue influence over the judge. More properly it is an application for change of judge. The Argus Company asserts that the application was not in the form required by the rules of court statutes and was properly overruled by the trial court.

The right to a change of venue including disqualification of a judge on the ground that he is biased and prejudiced is a statutory privilege, and strict compliance with the statute and the rules of this court is essential to the sufficiency of the application. Erhart v. Todd, Mo., 325 S.W.2d 750, 752 [1]; Von Eime v. Fuchs, 320 Mo. 746, 8 S.W.2d 824, 826 [7]; Industrial Acceptance Corporation v. Webb, Mo.App., 287 S.W. 657, 659 [3].

Both S.Ct. Rule 51.06 and· § 508.130, RSMo 1959, V.A.M.S., require that a petition be filed setting forth the cause relied on for the disqualification or the change of venue and that the applicant or his agent or attorney make and annex thereto an affidavit to the truth of the petition and stating that the affiant has just cause to believe that he cannot have a fair trial on account of the cause alleged. In Erhart v. Todd, supra, this court reviewed the cases and held the affidavit relied on was deficient in that it did not assert the *truth* of the application and that the trial court did not err in denying the change. The same situation prevailed in Industrial Acceptance Corporation v. Webb. In Von Eime v. Fuchs, the court held that an affidavit simply stating that notice of the preparation of the affidavit was given to the other party was an imperfection in its form and that the affidavit did not strictly comply with the change of venue statute.

In George L. Cousins Contracting Co. v. Acer Realty Co., Mo.App., 110 S.W.2d 885, 888, the reasons for requiring a strict compliance is stated as follows: "The courts hold that to entitle a party to a change of venue a strict compliance with the statute is essential. This is so doubtless because from the very nature of the remedy it is easily liable to serious abuses. In the instant case the affidavit annexed to the petition clearly does not comply with the statute. The affiant does not swear that he has just cause to believe that plaintiff cannot have a fair trial on account of the cause alleged, nor does he swear to the truth of the petition, but merely to its truth 'to the best of his knowledge, information, and belief.' The insufficiency of the affidavit is hardly open to question."

The application in the instant case alleges that the defendant Edwina W. Mitchell could not have a fair and impartial trial before the judge because the judge was prejudiced against her and that the St. Louis Argus Publishing Company had an undue influence over the judge. It "moves the Court to transfer this cause to

another Division of the Circuit Court". This motion or first portion of the application is signed by Edwina W. Mitchell. It should be noted, however, that this first part does not attest in any fashion the truth of the allegations made therein.

The second part of the application immediately following Mrs. Mitchell's signature consists of two paragraphs and is signed by a notary public in Philadelphia, Pennsylvania. It reads as follows:

"Personally appeared before me, the undersigned Notary Public, the within named Edwina W. Mitchell who after being first duly sworn says that she cannot have a fair and impartial trial in Division No. 3 and that the matters and facts stated in the above Motion are true and correct.

"Sworn to and subscribed before me this 14th day of September, 1962

"My term Expires June 21, 1965

"/s/ Marian B. Johnson
           "Notary Public"

■■■ This second part of the application is not signed by Edwina W. Mitchell or by anyone for her. The notary's certificate that the document was "subscribed" before him could only refer to the motion in the first part of the document since that is the only part signed by Edwina W. Mitchell. Part one of the application, however, cannot be treated as the statutory affidavit or a combination of the petition and affidavit because it does not assert "the truth of the petition" as required by the statute and the rule of this court. The intervenor cannot take advantage of the allegation in part two that the facts stated in the motion are true and correct because that part of the application is not subscribed by her. A jurat is defined as "a certificate added to an affidavit stating when, before whom, and in British practice where it was made". Webster's New International Dictionary, Third Edition. See also Bouvier's and Ballentine's law dictionaries. A

jurat need only consist of a statement "sworn to and subscribed" before the notary public as in the last paragraph of the application set out above. In fact the omission of the jurat will not render a properly executed affidavit a nullity. State ex rel. Knapp v. Cowan, 230 Mo.App. 226, 88 S.W.2d 424, 426 [6]. In any event a jurat cannot be employed to cure the deficiencies of a statutory affidavit.

■■■ The first part of the application is not sufficient as a statutory affidavit in that it does not contain an allegation that the facts are true, and the second part of the application is not effective because it is not signed by Edwina W. Mitchell or her agent. Decisions of the appellate courts of this state have uniformly held that the failure to sign an affidavit renders the instrument wholly ineffective. Robertson v. Robertson, 270 Mo. 137, 192 S.W. 988, 989 [3]; Elsea v. Bass, 229 Mo.App. 250, 77 S.W.2d 164, 165–166 [3]; Hargadine v. Van Horn, 72 Mo. 370; Davison v. Arne, 348 Mo. 790, 155 S.W.2d 155. The Hargadine case was an action in ejectment in which an unsigned affidavit for an attachment was held to be a nullity. Robertson was a divorce case in which the petition was signed by the plaintiff but she had failed to sign the affidavit although the jurat of the notary public had been properly executed. The affidavit and jurat are set out in full at 192 S.W. 988, and the prior cases including Hargadine are discussed and relied on. Elsea v. Bass was a replevin suit in which the affidavit was unsigned although the jurat of the notary public appeared. The affidavit was held to be void and wholly ineffective.

■■■ The rule is well established in Missouri that an unsigned affidavit is no affidavit at all. Royal Loan Co. of St. Louis v. Darr, Mo.App., 220 S.W.2d 787, 789 [2,3]; State ex rel. Knapp v. Cowan, 230 Mo.App. 226, 88 S.W.2d 424, 425 [2]. When there is no affidavit attached to the application for change of venue or the affidavit is insufficient, the trial court can-

not be convicted of error in overruling it. Spencer v. Smith, Mo.App., 128 S.W.2d 315, 318 [3, 4]; State ex rel. State Highway Commission of Missouri v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169, 170 [2, 3]. The effort required to file a proper application for a change of judge or venue is slight compared to the abuses that are likely to follow a less stringent requirement. The court did not err in denying the application.

■ The intervenor's next contention is that the trial judge erred in denying her motions and other requests for a jury trial of issues of fact "especially since the Argus has an undue influence over the judge." Our examination of the transcript discloses nothing to substantiate this charge of "undue influence". On the contrary, the trial court exhibited patience and fairness in situations fraught with personal feelings that often permeate cases of this kind and permitted the parties considerable latitude in developing their theories and adducing supporting evidence. As has been previously stated, the conflicting testimony took a rather narrow range.

Essentially the action was one to determine title to the real estate in question. The intervening petition of Mrs. Edwina sought to have the deed of May 27, 1950, declared void and removed as a cloud on the title, and to establish an interest in the real estate or its proceeds. In another count she sought an accounting of rents and insurance proceeds collected by Argus for fire damage to the building. The respondents claimed title by adverse possession, estoppel and laches, and sought injunctive relief from other actions threatened by the intervenor. The intervenor predicates her claim of right to a jury trial on § 510.190, RSMo 1959, V.A.M.S., preserving jury trials unless waived. Section 527.150, RSMo 1959, V.A.M.S., however, more aptly covers the manner of trial of the issues in this case.

■ Both of the parties sought equitable relief. The principal disputed fact questions were whether the intervenor had signed the minutes of the October 1944 meeting of Mitchell Company and the waiver of the notice of the meeting and whether she had a part in the execution of the deed of May 27, 1950. The questions were integral parts of her request for cancellation of the deed as a cloud on her title. The relief she sought sounded in equity and she was not entitled to a jury trial on the fact issues necessary to support her claim. Burnett v. Johnson, Mo., 349 S.W.2d 19, 22 [2]; St. Joseph Lead Co. v. Fuhrmeister, 353 Mo. 232, 182 S.W.2d 273, 277 [5]; Kimberlin v. Roberts, 341 Mo. 267, 107 S.W.2d 24, 27–28 [6]; Dinkelman v. Hovekamp, 336 Mo. 567, 80 S.W.2d 681, 682 [2]; Ebbs v. Neff, 325 Mo. 1182, 30 S.W.2d 616, 620 [3]; Cuthbert v. Holmes, Mo., 14 S.W.2d 444, 445 [2]; Hauser v. Murray, 256 Mo. 58, 165 S.W. 376, 383 [2]. The motion and requests for a jury trial were properly denied.

■ The next two points deal with alleged errors in admitting in evidence two exhibits offered by the respondents. They are exhibit C, the purported deed from the Mitchell Company to the Argus Company dated May 27, 1950, and an executed copy of minutes of Mitchell Company, exhibit G, purporting to record the minutes of a meeting in October 1944. Mrs. Edwina's contention that she did not sign either of the exhibits may be jointly disposed of. The deed purports to be signed by her as president and the minutes by her as secretary; the waiver of notice of the meeting following the minutes also purports to be signed by her. During her testimony, Mrs. Edwina did not point out in what respect, if any, the signatures did not resemble her admitted signatures in evidence. With respect to the minutes, she claimed that she was not in St. Louis during October 1944, that she was in Washington, D. C., for a week during the middle of October attending a meeting of a Negro women's association. She stated that she returned to St. Louis during the first week of November 1944. On the other hand, there was

direct evidence that she was present on both occasions and that she signed the exhibits C and G. An incorrect date or a later signing would not vitiate the force and effect of the minutes for the purpose for which they were offered if she actually signed them.

Comparison of Mrs. Edwina's signatures on these exhibits with the other admitted signatures in evidence is highly persuasive that the signatures upon the exhibits are genuine. On all the evidence in the record, we conclude that the signatures of Edwina W. Mitchell on exhibits C and G are genuine. Furthermore, in reviewing the evidence in a non-jury case, we defer to the trial court's opportunity to judge the credibility of the witnesses and we may not set aside the judgment unless it is clearly erroneous. Section 510.310, subd. 4, RSMo 1949, V.A.M.S.; Barker v. Allen, Mo., 273 S.W.2d 191, 192 [2]. The trial court did not err in finding that the intervenor signed the exhibits.

Another objection to exhibit G, the minutes, is that it is a "carbon copy". The exhibit bears the signatures, however, of all the directors; they were also all of the shareholders of Mitchell Company according to intervenor's exhibit 2, the articles of agreement on which the Company was incorporated on February 6, 1942. Randazzo Macaroni Mfg. Co. v. Minneapolis & St. L. R. Co., Mo.App., 251 S.W. 466, cited by intervenor held that it was not error to sustain an objection to the introduction of a copy of a typewritten paper on the ground that the copy was not the best evidence; the nature of the copy was not shown and the ruling is not persuasive on the facts of this case. A carbon copy of a document is a duplicate or an original document repeated and where signed by the parties or otherwise properly identified is admissible over an objection that it is not the best evidence. Schroer v. Schroer, Mo., 248 S.W.2d 617, 621–622 [6–8]; State v. Trice, 338 Mo. 744, 92 S.W.2d 135, 136

[1]. The court did not err in overruling the objection on this ground.

Further, the intervenor contends that the waiver attached to exhibit G is insufficient and cites cases and statutes with respect to notices required for the calling of meetings of corporate directors and shareholders. It is a common practice in corporations where the stock is closely held to have the directors and shareholders sign waivers of notice of meetings rather than to follow the more troublesome and expensive procedures set out in the statutes. A person for whose benefit or protection a notice is intended may waive it. 66 C.J.S. Notice § 15, p. 653. In fact, a waiver of notice is contemplated by § 351.340, RSMo 1959, which provides, among other things, that: "Attendance of a director at any meeting shall constitute *a waiver of notice* of such meeting except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular meeting of the board of directors need be specified in the notice or *waiver of notice* of such meeting." Italics added. The waiver attached to the minutes, exhibit G, not only dispenses with notice of the time and place of the meeting of the board of directors but further states that the purpose of the meeting was to authorize the payment of funds on hand on the incumbrance on the property known as 2312–14–16 Market Street and authorize the transfer of the property to the St. Louis Argus Publishing Company. The waiver was signed by all of the directors including Edwina W. Mitchell. The meeting was not ineffective for lack of notice.

The intervenor further asserts that the resolution shown by the minutes could not be the basis of any action because no suit was brought on it within two years after the dissolution of the corporation as required by § 351.565, RSMo 1959, V.A.M.S. This statute provides that a suit

may be prosecuted or defended by the corporation *in its corporate name* if the action is commenced within two years after the date of dissolution. The statute has no relevancy since there was no attempt to sue the Mitchell Company in its corporate name. The trial court did not err in overruling the objection on this score.

■ The intervenor further objects to the admission of the minutes in evidence on the ground that exhibit G was not certified in the manner provided by § 490.250, RSMo 1959, V.A.M.S. The statute provides that, when authenticated as specified, *copies* of the minutes shall be received as prima facie evidence "in the same manner and with like effect as the originals." We have previously held that exhibit G was a duplicate original and since it was signed by all the parties in interest the statutory method of qualifying copies of minutes was not applicable. Santa Fe Hills Golf & Country Club v. Safehi Realty Co., Mo., 349 S.W.2d 27, 37 [10].

■ The intervenor complains that the minutes had no validity because they did not comply with § 351.400, RSMo 1959, V.A.M.S., which requires the directors to adopt a resolution and submit it to the stockholders. We have pointed out that the directors were also the owners of all of the stock. The board of directors of a corporation is authorized by statute to control and manage its property and business. Section 351.310, RSMo 1959, V.A.M.S. We are not here concerned with the rights of a shareholder to proceed against the corporation for violation of some statutory right which the corporation has denied him. The exhibit was offered to show the purpose and intent of Mitchell Company to transfer the property in question to Argus Company and as the basis for the execution of the warranty deed dated May 27, 1950. The objections are without merit and the court did not err in admitting exhibit G in evidence.

■ The deed of May 27, 1950, exhibit C, is further objected to on the ground

it was void and could not transfer title or be made the basis for color of title because the charter of the Mitchell Company had been forfeited January 1, 1946. The intervenor asserts that the title to the real estate at the time the deed was made in 1950 was vested in the directors and officers of the company as statutory trustees under § 351.-525, RSMo 1959, V.A.M.S. Intervenor further contends that the deed was defective in that the name of the president, Edwina W. Mitchell, was omitted from the acknowledgment, that it purported to bear the acknowledgment of J. E. Mitchell as secretary but was not signed by him, and that the corporate seal affixed to the deed bore the name "Mitchell Realty and Investment, a Corporation" thereby omitting the word "Company" from the corporation's name. We need not determine, however, the force of these latter defects upon the validity of the deed because it is well-recognized that a corporation whose charter has been forfeited has no legal existence and a deed executed by a defunct corporation is not effective to convey title to real estate. New Hampshire Fire Insurance Co. v. Virgil and Frank's Locker Service, 8 Cir., 302 F.2d 780, 782–783 [1]; Leibson v. Henry, 356 Mo. 953, 204 S.W.2d 310, 315 [5]; Bradley v. Reppell, 133 Mo. 545, 32 S.W. 645, 647, 34 S.W. 841. In fact, the respondents make no claim that the deed is effective as a conveyance of land but contend that the deed is admissible as tending to show color of title and adverse possession.

■ "Although the instrument under which color of title is claimed may be actually void and convey no title, if it purports on its face to convey the title to the land in question by appropriate words of transfer it will constitute color of title." Jamison v. Wells, Mo., 7 S.W.2d 347, 348 [6]. See also Barker v. Hayes, 347 Mo. 265, 147 S.W.2d 429, 430 [5]; Johnson v. Moore, 346 Mo. 854, 143 S.W.2d 254, 256 [5]; Woodside v. Durham, 317 Mo. 15, 295 S.W. 772, 781 [4], 53 A.L.R. 884; Bergesen v. Clauss, 15 Ill.2d 337, 155 N.E.2d 20, 22–23 [4], 68 A.L.R.2d 446. The deed although ineffectual as a

conveyance possessed the requisites set out in Jamison v. Wells and was relevant evidence on the issue of color of title and adverse possession. The trial court did not err in admitting exhibit C in evidence.

Next the intervenor contends the court erred in refusing to make specific findings of fact requested by her and in finding other matters as facts which were not in evidence, citing in support S.Ct.Rule 73.01(b) and (d) and § 510.310, RSMo 1959, V.A.M.S. It is not necessary to discuss in detail the seven specifications because both the rule and the statute provide that: "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." The judgment and decree rendered by the court occupies eleven pages in the transcript and includes findings of fact and declarations of law. If the evidence is sufficient to support the decree, the intervenor cannot predicate error upon the finding of superfluous facts by the trial court or the failure to find in accordance with the requests made because in a case of this nature the appellate court reviews the record de novo and reaches its own conclusions on the law and the evidence giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. S.Ct.Rule 73.01(d) and § 510.-310, subd. 4, RSMo 1959 V.A.M.S.; Santa Fe Hills Golf & Country Club v. Safehi Realty Co., Mo., 349 S.W.2d 27, 33 [2]; Franck Bros., Inc. v. Rose, Mo., 301 S.W. 2d 806, 811 [2]; Barker v. Allen, Mo., 273 S.W.2d 191, 192 [2].

The intervenor further contends that the evidence was not sufficient to support a finding that the Argus Company was vested with title by adverse possession and asserts that the judgment and decree should have been in her favor. She cites such cases as Franck Bros., Inc. v. Rose, Mo., 301 S.W. 2d 806, Hilgert v. Werner, 346 Mo. 1171, 145 S.W.2d 359, and Badger Lumber Co. v. St. Louis-San Francisco Ry. Co., 338 Mo. 349, 89 S.W.2d 954, which in general hold that "adverse possession" in order to be effective must be hostile and under a claim of right, actual, open and notorious, and exclusive and continuous. The controversy in this respect relates almost wholly to the force and effect of the evidence.

Section 516.010, RSMo 1959, V.A.M.S., provides that no action for the recovery of lands shall be commenced, had or maintained unless the plaintiff or the person under whom he claims was seized or possessed of the premises in question within ten years before the commencement of such action. Section 516.040 is as follows: "The possession, under color of title, of a part of a tract or lot of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract." This court has held that a title by adverse possession where the entry is under color of title may be established by a less weight of evidence than a bare entry by an intruder under no claim of right. Draper v. Shoot, 25 Mo. 197, 202.

Respondents' exhibit C, the deed of May 27, 1950, recited that the instrument was signed and sealed by authority of its board of directors. The description of the real estate was correct, the parties were properly named, and the words of conveyance were in usual form. It appears that this deed was a belated effort to comply with the resolution adopted by the directors of Mitchell Company in October 1944 when the charter of the corporation was in good standing. The recording of the deed on June 20, 1950, gave notice to the world that Argus Company was claiming legal title, but Mrs. Edwina W. Mitchell is charged with actual notice by reason of her participation in the directors' meeting and her signing of the minutes and the warranty deed. See 39 Am.Jur., Notice and Notices, § 18, p. 242. It is not necessary to determine what, if any, equitable claim the Argus Company had in the property after the adoption of the resolution in 1944. We do rule that the execution and recording of the deed in 1950

constituted "color of title" as the basis for adverse possession even though the deed itself was not effective to convey the title. Feinstein v. McGuire, Mo., 297 S.W.2d 513, 517 [8].

■ The salient facts .upon which the claim of adverse possession depends are that Argus was in possession continuously at least from May 1950 until April 1961, that during the entire period Argus Company paid no rent and collected and retained as its own the rents from other tenants, that it paid taxes on the real estate in question which was assessed in the name of St. Louis Argus Publishing Company, and that Argus insured the property and collected the proceeds of two fire insurance losses and restored the building and made repairs during the entire period it was in possession. No one contested these acts of ownership or disputed the title of Argus Company until the invalidity of the deed was discovered while the condemnation action was pending at which time Mrs. Edwina W. Mitchell first learned of the defective title and intervened in the action. In Jamison v. Wells, Mo., 7 S.W.2d 347, 348, this court stated: "No more affirmative act of ownership can be asserted than the rental of the land by the plaintiff and the collection of the rents thereon. The inclosure of the same by fences at different times and the payment of taxes due on the land are, in addition to other more potential facts, persuasive evidence of actual possession." See also Johnson v. Moore, 346 Mo. 854, 143 S.W.2d 254, 256 [1, 2], and Woodside v. Durham, 317 Mo. 15, 295 S.W. 772, 783 [6], 53 A.L. R. 884.

The Argus Company was in possession for more than ten years under a claim or color of title and the acts of ownership exercised by it during that period of time constituted adverse possession. We further find the possession of Argus was not permissive, but was under a claim of right and was hostile. Barker v. Allen, Mo., 273 S.W.2d 191, 194 [3]. Under all the evidence we hold that Argus Company ac-

quired title to the real estate in question by adverse possession and is entitled to the decree in its favor on that ground. Feinstein v. McGuire, Mo., 297 S.W.2d 513, 517 [10]; Barker v. Allen, Mo., 273 S.W. 2d 191, 194 [4, 5]; Johnson v. Moore, 346 Mo. 854, 143 S.W.2d 254, 257 [7]; Jamison v. Wells, Mo., 7 S.W.2d 347, 348 [9].

The trial court also found that the intervenor was estopped to deny Argus' title and there is considerable evidence in the record to support this theory. The intervenor has presented this question on appeal and the respondents have treated it in their brief. We need not pursue the matter further, however, since the evidence is clear and convincing that Argus Company acquired title by adverse possession and we have so held.

■ The intervenor's remaining contention is that the court erred in overruling her motion to strike parts of the second amended cross-complaint of Argus seeking special damages in the nature of interest on the fund deposited and to cover the cost and expenses of obtaining money to relocate the newspaper business because Argus was unable to use the proceeds of the real estate. Argus also sought punitive damages in the sum of $10,000 on the ground the claim of the intervenor was malicious and deliberate. Since the ruling was not an adjudication on the merits, the intervenor was not prejudiced and the court did not err in overruling the motion and disposing of the issues after the hearing on the merits. Johnson v. Frank, 354 Mo. 767, 191 S.W.2d 618, 623–624 [10].

The judgment and decree held that Argus Company was the sole and absolute owner of the real estate at the time it was taken in condemnation and was entitled to the entire fund on deposit with the clerk of the court and that the intervenor had no interest therein. It was further ordered that Argus Company have and recover judgment of the intervenor interest at the rate of six percent on $43,500 from September 29, 1961, to December 17, 1962, in the sum of $3,046.99

and at six percent thereafter until the amount due was paid. The prayer of Argus Company for punitive damages was denied. The costs of the entire proceedings were taxed against the intervenor. The intervenor contends that the court erred in allowing interest and asserts that the costs should be paid out of the money deposited in court. The question of interest is the most difficult one. The parties have not cited any authorities directly in point and we have discovered none in our independent research.

As a part of its final judgment, the court permanently enjoined the intervenor or anyone acting on her behalf from asserting any claim, interest, right, title, or ownership of the property or the fund in question. In support of the interest allowance, Argus Company cites 28 Am.Jur., Injunctions, § 291, p. 803, dealing with awards of damages or compensation in connection with injunctive relief. It also cites Virginia Public Service Company v. Steindler, 166 Va. 686, 187 S.E. 353, 105 A.L.R. 1413, dealing with the rights of a corporate shareholder to recover damages suffered by reason of the corporation's refusal to make a transfer of stock. Neither of these authorities are persuasive in the present situation.

Where the amount of compensation for taking private property for public use has been finally ascertained and deposited in court, the condemnation action proper is terminated and the proceedings for the disposition of conflicting claims to the funds on deposit must be conducted and determined as nearly as may be in accordance with the rules of law and procedures governing ordinary civil actions involving similar issues. 29 C.J.S. Eminent Domain § 205 b, p. 1121; Oliver v. United States, 8 Cir., 156 F.2d 281. The money on deposit in court is substituted for the real estate taken and conflicting claims of interests in the property are transferred to the fund. City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 604 [9–12].

The issues made and tried in the instant case were in the nature of a suit to quiet title and for the cancellation of the deed alleged to constitute a cloud on the title. In the usual litigation involving such issues, interest is not a factor, but the prevailing party is entitled to have the costs taxed in his favor. Hart v. T. L. Wright Lumber Co., 355 Mo. 397, 196 S.W.2d 272, 277–278 [7]. Also a condemnation award paid to the clerk of the court as provided by law cannot be distributed without an order of the court, thereby imparting to it the characteristics of a deposit in court. Sections 523.040 and 523.050, RSMo 1959, V.A.M.S.; State ex rel. State Highway Commission of Missouri v. Paul, Mo., 368 S.W.2d 419, 423 [9–11]. As a general rule, interest cannot be recovered while a fund is on deposit in the registry of the court. 30 Am.Jur., Interest, §§ 53 and 54, pp. 45 and 46; 47 C.J.S. Interest § 54, p. 66; Bowman v. Wilson, C.C. 12 F. 864.

Although the circumstances are quite persuasive, we cannot say it has been demonstrated under existing law that Argus Company is entitled to special damages or interest prior to judgment. Zimmerli v. Waldorf Restaurant Co., 122 Wash. 383, 210 P. 801, 802 [3]. After the final judgment was rendered on December 17, 1962, the amount due Argus was liquidated and Argus was entitled to the entire fund but was prevented from obtaining it by the intervenor's appeal and the supersedeas bond posted. Section 408.040, RSMo 1959, V.A.M.S.; State ex rel. Dean v. Douglas, 236 Mo.App. 1284, 165 S.W.2d 304, 308 [7]. The intervenor became liable for interest from the date of judgment and is also liable for the entire amount of taxable costs and such costs cannot be paid out of or deducted from the fund on deposit.

That part of the judgment and decree allowing interest from September 29, 1961, to December 17, 1962, is set aside and for naught held. In all other respects, the judgment is affirmed for the reasons and on the grounds herein stated. It is further ordered

that the Argus Company have and recover from the intervenor interest on the fund in the registry of the court from December 17, 1962, to the date of distribution and payment, and that the costs of the proceedings for distribution of the fund be taxed against the intervenor, Edwina W. Mitchell.

DALTON, HYDE, HOLMAN and HENLEY, JJ., concur.

EAGER, C. J., dissents in part and concurs in part in separate opinion filed.

LEEDY, J., dissents and adopts opinion filed in Division Two by STOCKARD, C., as his dissenting opinion.

EAGER, Chief Justice (dissenting in part and concurring in part).

I believe that the application for a change of judge constituted a substantial compliance with § 508.130, RSMo 1959, V.A.M.S. and with our Rule 51.06, though technically objectionable. I so voted in Division and I still feel that the application should have been sustained. However, since the majority here votes otherwise, I wish also to express my concurrence in the foregoing opinion in so far as it deals with the merits.

## OPINION OF COMMISSIONER STOCKARD IN DIVISION 2.

In view of the result we have reached on this appeal a brief statement of the facts in the form of a general summary will suffice.

The Land Clearance for Development Authority of St. Louis obtained title by condemnation to a tract of land located at 2312–14–16 Market Street in the City of St. Louis, and it paid $43,500 into the registry of the court which was the amount determined to constitute just compensation for the taking thereof. There is no issue on this appeal pertaining to the right to condemn or the amount of the award. Appellant was permitted to intervene, and she contends that immediately prior to the taking by condemnation, title to the property was vested in the statutory trustees of the Mitchell Realty and Investment Company, whose corporate charter was forfeited by the State of Missouri on January 1, 1946, and that as the owner of eight of the total of eighteen shares of stock issued by that corporation she is entitled to four ninths of the award and to an accounting of the rents and profits from the property. The St. Louis Argus Publishing Company contends that it was the sole owner of the property at the time of the condemnation, and that it is entitled to the entire award. By a cross-complaint it also sought a declaratory judgment, and injunction and special damages. The numerous pleadings, motions, and rulings pertaining to the above issues occupy more than 150 pages in the transcript.

The case was tentatively set for trial in Division 3 of the Circuit Court of St. Louis City on November 12, 1962. On September 17 appellant filed what she incorrectly denominated a motion for a change of venue, but which was an application to disqualify the trial judge. That application was denied by the trial court without stating its reasons for doing so. Trial was subsequently had before the court without a jury, after appellant's motion for a jury trial was overruled, and judgment was entered adverse to appellant. The refusal to grant the application to disqualify the trial judge was assigned by appellant as error in the motion for new trial, and it is properly preserved and presented for appellate review.

Civil Rule 51.03, V.A.M.R. (reference is made herein to the Civil Rules pertaining to disqualification of a judge in effect prior to the effective date of certain changes made in 1963) provides that "If it shall be alleged by either party to the cause that the judge is * * * prejudiced, * * * or that the opposite party has an undue influence over the mind of the judge," the court shall take the authorized steps to obtain another judge to sit in the cause, but when the disqualification is made of a judge

in a multiple judge circuit, pursuant to Civil Rule 51.16 "such case shall be transferred to another division of said circuit court presided over by a different judge." Civil Rule 51.06 provides that this application shall be made by "a petition setting forth the cause of [the] application for * * * disqualification and when he [the party, his agent or attorney] obtained his information and knowledge of the existence thereof," and it also provides that there shall be annexed to the petition an affidavit, made by himself, his agent or attorney, "to the truth of the petition, and that affiant has just cause to believe that he cannot have a fair trial on account of the cause alleged."

Appellant contends on this appeal that her application "was in proper form in all respects," and that under such circumstances it was prejudicial error to deny her application to disqualify the judge. The only reason advanced by respondents in support of the action of the trial court is that the affidavit annexed to the motion "was insufficient both as to form and substance."

Although it is clear that the rules contemplate the presentation to the court of a petition in which there is alleged an authorized ground for an application to disqualify the judge, and that there shall be annexed to the petition an affidavit containing certain averments, appellant did not present her application in that form. Instead, what appellant did was to consolidate the petition and the affidavit so that each consists of the entire instrument. However, if the minimum requirements for both the petition and the affidavit are contained therein, poor draftsmanship should not prevent consideration of the substance of the application.

Appellant first alleges in her combined petition and affidavit that "she cannot have a fair and impartial trial * * * for the reason the * * * judge is prejudiced against her," and for the additional reason that the St. Louis Argus Publishing Company, the opposite party to appellant, "has an undue influence over the said judge."

She then alleges that she did not learn of the above facts until September 14, 1962, and that "this affidavit is filed within five days after your affiant became aware of the foregoing facts." She prayed the court "to transfer the cause to another division of the circuit court, in the manner prescribed by law." Following this is appellant's signature. There then appears a jurat wherein it is stated that appellant personally appeared before the certifying notary public, and "who after being first duly sworn says that she cannot have a fair and impartial trial in Division No. 3 and that the matters and facts stated in the above motion are true and correct." It thus appears that appellant alleged at least one of the grounds set forth in Civil Rule 51.03 to disqualify the trial judge, and that she appeared before a notary public and swore that the facts stated in the "motion," which was her petition, were "true and correct," and that she also swore that she "cannot have a fair and impartial trial * * * for the reason the * * * judge is prejudiced against her."

It has been said that it is essential that there be strict compliance with the provisions relating to the substance of the petition to disqualify a judge and to the substance of the affidavit required to be annexed thereto. Erhart v. Todd, Mo., 325 S.W.2d 750. However, this does not apply to mere matters of form. La Grange Elevator Co. No. 111 v. Richter, Mo.App., 129 S.W.2d 22. As previously noted, the petition and affidavit are not in the form prescribed by the rules, but our examination of the instrument discloses that it contains every allegation of substance and every affirmation under oath required by the rules to constitute a valid application for disqualification of the trial judge.

The Civil Rules provide, see Rules 51.03 and 51.16, and it has long been the rule by court decision that when a party files an application to disqualify the judge, if it is the first such application by that party, the judge " 'has power only to determine whether the application is in due form and due

time, and if it is, to see that the proper steps are taken to substitute another judge' —he may not pass on his own qualifications." State ex rel. Kansas City Public Service Co. v. Waltner, 350 Mo. 1021, 169 S.W.2d 697, 700; State v. Bailey, 344 Mo. 322, 126 S.W.2d 224, 227. We construe the above reference to "due form" to mean that the judge is to determine whether the application contains all required allegations and all required affirmations under oath; it does not refer to matters of draftsmanship. There is no requirement that the petition be supported by evidence. Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323. It is not contended in this case that the application was not timely. While it is true that at the time it was filed appellant had previously filed her responsive pleadings, she alleged that the knowledge of the disqualification was not obtained until September 14, 1962. The application was filed on September 17, and the time set for trial was eight weeks away. We cannot say that these circumstances result in the application being untimely.

Respondents rely on Robertson v. Robertson, 270 Mo. 137, 192 S.W. 988; Erhart v. Todd, supra; Industrial Acceptance Corp. v. Webb, Mo.App., 287 S.W. 657; and Spencer v. Smith, Mo.App., 128 S.W.2d 315. The Robertson case pertained to the sufficiency of a divorce petition. It was there held that in some situations an affidavit must be signed by the affiant. See also Royal Loan Co. of St. Louis v. Darr, Mo.App., 220 S.W.2d 787, 789. However, we have determined that in this case the entire instrument constituted the affidavit, and it was signed by the affiant and was sworn to before a notary public. In the Erhart case the application to disqualify the judge was denied by the trial court because it was "untimely filed after the cause was called for trial" and because the affidavit was insufficient. On appeal the sufficiency of the affidavit was not ruled, and its terms are not set out. We cannot tell from the Spencer case whether there was no affidavit at all or whether it did not contain the

sworn statement that "affiant has just cause to believe that he cannot have a fair trial on account of the cause alleged." As previously noted, the equivalent of such affirmation is in the affidavit in this case. In the Industrial Acceptance case the affidavit to an application was held insufficient because it was "not to the *truth* of the facts stated" but only "to their truth according to the best knowledge and belief of affiant." Regardless of the merits of that distinction, appellant in this case swore that "the facts stated * * * are true and correct." These cases do not provide any basis for sustaining the action of the trial court in this case.

It is unfortunate that after the lengthy trial of this case there cannot now be a final disposition of the merits on this appeal. However, under the circumstances appellant was entitled to a trial of this case before a different trial judge, and the denial of that right was prejudicial.

The judgment is reversed and the cause remanded.